In the Matter of the Application for Disciplinary Action Against Berentje C. M. POHLMAN, a Member of the Bar of the State of North Dakota.

GRIEVANCE COMMISSION, Petitioner,

v.

Berentje C. M. POHLMAN, Respondent.

Civ. No. 9178.

Supreme Court of North Dakota.

Dec. 31, 1976.

Rehearing Denied Jan. 20, 1977.

William D. Yuill, Fargo, for Grievance Commission, petitioner.

John O. Garaas and David A. Garaas, Fargo, for respondent; argued by John O. Garaas, Fargo.

ERICKSTAD, Chief Justice.

We have before us a disciplinary action brought under our Rules of Disciplinary

Procedure against Berentje C. M. Pohlman, a member of the Bar of the State of North Dakota, who resides in the City of Enderlin, where she practices law. On September 17, 1974, Miss Pohlman was convicted on three counts of willful failure to file income tax returns for the years 1968, 1969, and 1970, a misdemeanor under 26 U.S.C. § 7203. The District Court judgment was reversed by a three-judge panel of the Eighth Circuit Court of Appeals. *United States v. Pohlman*, 510 F.2d 414 (8th Cir. 1975). On rehearing *en banc*, the Eighth Circuit Court of Appeals vacated the panel opinion and affirmed the District Court judgment. *United States v. Pohlman*, 522 F.2d 974 (8th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638.

■ This court has jurisdiction in all matters involving admission of persons to practice law in this State (Rule 46 of the North Dakota Rules of Appellate Procedure), and, necessarily, in disciplining such persons (North Dakota Supreme Court Rules of Disciplinary Procedure).

When we adopted the Disciplinary Rules currently in effect, we said:

"This court declares that it possesses original and exclusive jurisdiction under the provisions of Section 27–02–07, North Dakota Century Code, in addition to its inherent jurisdiction, in all matters involving admission of persons to practice law in this State and of the disciplining of such persons. In the exercise of that jurisdiction, it adopts and promulgates the following rules which shall govern disciplinary proceedings.

"Any acts committed by an attorney, contrary to accepted standards of honesty, justice, or morality, including but not limited to those outlined in Section 27–14–02, North Dakota Century Code, and the violation of the duties outlined in Section 27–13–01, North Dakota Century Code, may constitute cause for discipline. Where such act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to suspension or to the institution of disciplinary proceedings,

nor shall acquittal necessarily constitute a bar thereto. Any violation of the canons of professional ethics, as adopted by the American Bar Association and affirmed by the State Bar Association of North Dakota, may also constitute cause for discipline."

Since the adoption of the Rules, the Judicial Article of our State Constitution has been amended, *see* Primary Election Results of September 7, 1976. Our jurisdiction over admission and discipline of lawyers is now derived from Section 87 of our State Constitution as amended, *see* Chapter 615 of the Laws of North Dakota, 1975.

As the provisions of Section 27–14–02, N.D.C.C., were incorporated into our Disciplinary Rules, and are currently in effect, we must today consider paragraphs 1. and 7. of that section under which disciplinary action was taken against Miss Pohlman.

"The certificate of admission to the bar of this state of an attorney and counselor at law may be revoked or suspended by the supreme court if he has:

"1. Committed a felony or a misdemeanor involving moral turpitude;

. . . . .

"7. Committed any other act which tends to bring reproach upon the legal profession. The enumeration of certain grounds for disbarment or suspension of attorneys at law shall not be deemed a limitation upon the general powers of the supreme court to suspend or disbar for professional misconduct." § 27–14–02(1)(7), N.D. C.C.

Although counsel for Miss Pohlman argued that due process was not afforded Miss Pohlman in that a number of the rules of disciplinary procedure were not followed by the Grievance Committee East and by the Grievance Commission, as counsel informed the court that a remand was not desired, we shall not consider that issue in this opinion.

■ The remaining basic issue is whether the crime of which Miss Pohlman has been

convicted is one involving moral turpitude. We hold that the willful failure to file an income tax return is, *per se*, a crime involving moral turpitude.

In so doing, we must disagree with the conclusion of the referee assigned by our court to hear this case. The trial judge, acting as referee, concluded that "the standard dictionary definition (vile, immoral, shameful, base, depraved) somehow doesn't fit the action and certainly not the person" in the instant case. We do not believe that to be the proper standard to be applied.

In a relatively recent case which did not involve a failure to file an income tax return, but in which we discussed moral turpitude, we said:

"... What constitutes moral turpitude is not subject to exact definition. However, in considering this question, we must keep in mind that we are not considering the question in relation to a layman but with respect to an attorney. In this request the supreme court of Ohio, in *Cincinnati Bar Association v. Shott*, 10 Ohio St.2d 117, 226 N.E.2d 724, 733 (1967), stated:

" 'In determining whether any given act by an attorney constitutes moral turpitude, consideration must be given to the status of an attorney. In this case, we are confronted with one trained in the law who, by taking the oath as an attorney and accepting his certificate to practice, has assumed a position of public trust, holding himself out to the public as fit and capable of handling its funds and problems. He has assumed a position of responsibility to the law itself, and any disregard thereof by him is much more heinous than that by the layman who may breach the law in all innocence.

" 'Thus, that which constitutes moral turpitude for a lawyer is far different from that which constitutes moral turpitude for the layman. The lawyer, because of his training and position of public trust, must be held to a more strict standard than the layman.' " *In

*Re Anderson*, 195 N.W.2d 345, 348 (N.D.1972).

More recently, we considered whether another lawyer who was convicted of the crime of failing to file a federal income tax had committed a crime involving moral turpitude. Because matters other than the conviction were involved, it cannot be considered precedent for the view that such a crime involves moral turpitude; but, as the other matters related to the offense charged, or a similar offense repeated, and a violation of the lawyer's probation, we think our conclusion that the conviction involved moral turpitude is the next thing to holding that the offense alone constituted a crime involving moral turpitude.

"We are compelled to conclude that failure to file a federal income tax return, which is a misdemeanor, but which violation in reality turns out to be a second violation and also a violation of a condition of his probation, and the wrongful claiming of ineligible dependents, constitute actions involving moral turpitude for which a suspension from the practice of law is warranted." *Matter of Fosaaen*, 234 N.W.2d 867, 869 (N.D.1975).

We are cognizant of the fact that the California Supreme Court has held that a conviction of willful failure to file income tax returns does not establish moral turpitude on its face. *Re Fahey*, 8 Cal.3d 842, 106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465 (1973). Our reading of that case indicates to us that the basis of California Court's conclusion is that an intent to defraud is not required for conviction under 26 U.S.C. § 7203. This factor is not critical to what we perceive as moral turpitude in a proceeding such as this.

Other courts have taken an opposite view and have recently held that an attorney's conviction for failing to file federal income tax returns involves moral turpitude warranting disciplinary action. *See In Re Bass*, 49 Ill.2d 269, 274 N.E.2d 6 (1971); *In Re Kueter*, 501 S.W.2d 486 (Mo.1973); *In Re Kline*, 156 Mont. 177, 477 P.2d 881 (1970); *State Board of Law Examiners v. Holland*, 494 P.2d 196 (Wyo.1972).

In *Holland*, the Wyoming Supreme Court in a *per curiam* opinion rendered in 1972, reacted to the respondent's contentions in this manner:

"Respondent here objects to the findings and recommendations on three grounds:

"1. A plea of nolo contendere cannot form the basis for a conviction within the meaning of § 33–54.

"2. Respondent was not convicted of a crime involving moral turpitude.

"3. Suspension for the five years is unduly harsh.

"The first two objections are without merit, this court having previously determined in other disciplinary action that the violation of the mentioned Federal statute in the willful and knowing failure to make an income tax return to the Federal government, resulting in a conviction, regardless of the nature of the plea, involves moral turpitude, which determination is consistent with the views of other courts in the Nation. . . ." *Id.* 494 P.2d at 197.

We have come to the conclusion that the better view, the one most logical and the one most easily understood, is that the crime of failing to file a federal income tax return in violation of 26 U.S.C. § 7203, although a misdemeanor, is a crime involving moral turpitude. Notwithstanding that conclusion, we believe that the appropriate Grievance Committee, the Grievance Commission, and a referee if one is appointed, should examine into the circumstances of each case to determine recommendations relative to punishment or discipline.

In the instant case, because the referee was in a much better position to weigh the testimony of those who spoke in behalf of Miss Pohlman and to determine in general the mitigating circumstances, and, because we have previously not rendered an opinion on this specific issue, we accept the referee's recommendation that counsel not be suspended, but that she be only reprimanded.

An attorney who has specialized in income tax law, prepared thousands of tax returns, and acknowledges that she is fully aware of the Internal Revenue Code provisions requiring the filing of income tax returns, sets a poor example for clients to follow by not filing a personal income tax return.

While this court has not previously written an opinion concluding that a willful failure to file a federal income tax return is a crime involving moral turpitude, we take note of the fact that we did enter a minute order dismissing an action similar to this one in 1963. In that case, our file number 7890, the referee found that the subject of the disciplinary action had failed to file while suffering from alcoholism and had been rehabilitated, concluding that moral turpitude was not involved, and that the individual's action did not bring reproach upon the profession. Our present court is not of that persuasion.

■ In light of this court's past action as referred to above, and in light of our referee's findings, to which we accord appreciable weight, that professional and public duties contributed to Miss Pohlman's failure to file income tax returns in the years specified, we do not revoke or suspend her license to practice law. We do believe, however, as recommended by the referee, that a reprimand is in order. This opinion shall constitute such a reprimand.

■ Unfortunately we cannot end our opinion here, as in the course of these proceedings, an additional concern has arisen over the respondent's attitude and behavior toward those whose services this court deems indispensible. If we are to enforce the Rules of Disciplinary Procedure of our court and maintain the high standards of the legal profession, we must be concerned with such attitude and behavior.

Her attitude and behavior, which perhaps could be characterized as defiant, antagonistic, and highly critical, are indicated in her letter to this court of May 10, 1976, her complaint against the members of the Grievance Commission and its former chairman, Mr. Lowell W. Lundberg, filed with the Secretary of the Grievance Commission

on October 18, 1976, and her letter to Mr. William D. Yuill, counsel designated by the Grievance Commission to prosecute this case.

We think little good could come from our inclusion of the contents of the first two of the aforementioned, but to indicate of what we are speaking, we include the pertinent part of Miss Pohlman's letter to Mr. Yuill, which apparently was sent to Mr. Yuill shortly after his appearance in our court on the occasion of the hearing of the referee's report. It reads:

"December 18, 1976
"Mr. William D. Yuill
414 Gate City Building
Fargo, North Dakota 58102
"Dear Mr. Yuill:

"I demand an apology of you for the imputations that you have uttered before the Supreme Court (and Now I learn, before the Hon. Judge O'Keefe) relating to my personal relationship with persons who appeared before Judge O'Keefe. To what degree of vileness will you people stoop?

"If I were a man I would have physically done to you what I said orally should be done to you, and that is smash your teeth to where they belong.

"I take note that when people swill in a sewer as you must do, it is difficult for you to comprehend that there are people on the face of this earth who live honorable lives.

"I can only end this with,

"Contemptuously,

"/s/ Berentje Pohlman
"Berentje Pohlman"

Having personally observed Mr. Yuill in his appearance before our court, we conclude that his conduct was beyond reproach.

We have previously considered Miss Pohlman's complaint against the Grievance Commission, and believe that it, too, was completely uncalled for. It should be noted that the members of the Grievance Commission serve at our appointment, without pay. Without their loyalty and conscientious service to our court, the disciplinary arm of our court could not function.

Accordingly, unless Miss Pohlman mails a written apology to Mr. William D. Yuill, each of the members of the Grievance Commission, and Mr. Lowell W. Lundberg, the former chairman of the Grievance Commission, by the 10th of January, 1977, and files in the office of the clerk of this court, copies of each of the apologies, proof of such mailing of such apologies, evidenced by a certified mail receipt in each instance, her certificate of admission to practice law in this State shall be suspended indefinitely as of January 10, 1977, and shall continue until she complies with these conditions and thereafter makes application for lifting her suspension and this court restores her certification.

The respondent is ordered to pay the costs of the formal proceedings including legal fees and expenses, and costs of transcript of the hearing before the referee, to the clerk of the supreme court as shall be determined by the chairman of the Grievance Commission. The chairman of the Grievance Commission may authorize the payment of costs of the proceedings in equal installments extending over a period of one year. If payments are not made pursuant to the arrangements specified by the chairman of the Grievance Commission, the respondent's certificate of admission shall be suspended automatically, which suspension shall continue until the default in the payments is corrected.

VOGEL, SAND, PAULSON and PEDERSON, JJ., concur.