The BOARD OF LAW EXAMINERS OF
the STATE OF TEXAS, Appellant,

v.

Edward H. STEVENS, III, Appellee.

No. 3–92–005–CV.

Court of Appeals of Texas,
Austin.

Dec. 23, 1992.

Rehearing Overruled March 10, 1993.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

## ON MOTION FOR REHEARING

BEA ANN SMITH, Justice.

We withdraw the previous opinion of this Court, dated October 7, 1992, and substitute the following in its place.

The Texas Board of Law Examiners (the "Board") denied Edward H. Stevens, III's application for admission to the State Bar of Texas on the basis that he lacks "good moral character." Stevens appealed the Board's denial to the Travis County district court, which concluded that the Board's decision was not supported by substantial evidence. Accordingly, the district court reversed the Board's decision and remanded the cause for further proceedings. By a single point of error, the Board complains that the district court erred in failing to find that the Board's order was supported by substantial evidence. We will affirm the district-court judgment.

## BACKGROUND

Stevens, a member of the Mississippi State Bar for approximately twenty years, applied for admission to the State Bar of Texas in August 1985. In his application, Stevens disclosed two civil judgments entered against him for certain debts. Stevens indicated that he was financially unable to satisfy the judgments. Supplemental investigations revealed a third unsatisfied judgment as well as past difficulties with the Internal Revenue Service stemming from Stevens' failure to pay income taxes and file returns. Following a hearing in February 1988, the Board notified Stevens that his request for admission to the Texas Bar was denied.

## DISCUSSION

"Good Moral Character"

Applicants seeking admission to the state bar of Texas must possess good moral

character.[1] The Board of Law Examiners is empowered to investigate the moral character of each applicant for a license. Tex.Gov't Code Ann. § 82.028(a) (West 1988); Rule III(d), *Rules Governing Admission to the State Bar of Texas.*[2] The purpose of requiring an applicant to possess good moral character is "to exclude from the practice of law those persons possessing character traits that are likely to result in injury to future clients, in the obstruction of the administration of justice, or in the violation of the Code of Professional Responsibility." Rule II(b).

The legislative directive to the Board to certify the "good moral character" of each attorney admitted to practice law in this state is troublingly indefinite. The Rule adds little precision: "Good moral character is a functional assessment of character and fitness of a prospective lawyer." Rule II(b). The remainder of the rule suggests excluding those with character traits of dishonesty or lack of trustworthiness in carrying out responsibilities, "but such traits must have a rational connection with the applicant's present fitness or capacity to practice law and accordingly must relate to the State's legitimate interest in protecting prospective clients and the system of justice." *Id.*

The United States Supreme Court has warned that "good moral character" is a "vague qualification, which is easily adapted to fit personal views and predilections, [and] can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." *Konigsberg v. State Bar of Cal.,* 353 U.S. 252, 263, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1957). In a recent decision, this Court determined that

the Board of Law Examiners had "mistaken a spirited bumptiousness for a lack of good moral character." *Texas Bd. of Law Examiners v. Malloy,* 793 S.W.2d 753, 760 (Tex.App.—Austin 1990, writ denied). Critics of using "good moral character" as a measure of the suitability of prospective attorneys note that such a vague qualification opens the door to arbitrary and subjective judgments with no demonstrable relationship to the protection of future clients or the administration of justice. *See* Stephen K. Huber, *Admission to the Practice of Law in Texas: A Critique of Standards and Procedures,* 17 Hous.L.Rev. 687, 727–28 (1980).

These same critics advocate listing specific grounds of wrongful conduct that might exclude a prospective attorney from the practice of law, such as particular acts involving dishonesty or financial misdeeds and conviction for certain serious crimes. "A refusal to admit an applicant on character grounds should not be permitted unless the applicant had committed one of the serious wrongful acts specified in the character rules." *Id.* at 728. Other critics question the very premise that past behavior is a significant predictor of future legal performance, pointing to the lack of factual data supporting the efficacy of character investigation in identifying potentially harmful lawyers. *See id.* at 729–30.[3] Guided by the foregoing caveats and concerns, we turn now to the case before us.

The Standard of Review

The Board is charged with evaluating an applicant's character in order to protect the public from prospective lawyers who can be identified as having character traits that

---

**1.** The supreme court has been authorized to enact rules for admitting new attorneys to practice law in this state. The rules may include provisions to ensure the good moral character of each candidate. Tex.Gov't Code Ann. §§ 82.-022(a)(1)(A) and (b) (West 1988). Similarly, the court is authorized to enact rules governing the admission of attorneys from other jurisdictions to practice law in this state. "All such attorneys shall be required to furnish satisfactory proof as to good moral character." *Id.* § 82.036 (West Supp.1992).

**2.** Unless otherwise specified, all citations to rules will refer to the supreme court's *Rules Governing Admission to the State Bar of Texas,* enacted under the authority of Tex.Gov't Code Ann. §§ 82.022 and 82.036 (West 1988 & Supp. 1992).

**3.** "To the extent that external factors influence individual decisions, an examination of past behavior will not assist in predicting future actions. Unhappy marriage and excessive consumption of alcohol probably result in far more bad lawyering than dishonesty or personal venality." *Id.* at 729.

would probably harm future clients or demean the system of justice. In fulfilling this responsibility, the Board must refrain from imposing its own subjective judgment about who is fit to practice law. The district court reviews the Board's denial of an application to determine whether or not it is reasonably supported by substantial evidence.[4] Rule XI(m).

An agency order is supported by substantial evidence if the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency reached. *Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988). Under classical administrative-law theory, substantial-evidence review asks whether (1) the agency's findings of basic fact are reasonable conclusions from the evidence adduced in the agency and matters subject to judicial notice; (2) the agency's findings of ultimate fact are reasonable conclusions from the basic facts; and (3) the agency's final decision is a reasonable conclusion from the agency's findings of ultimate fact. *See generally* John Powers, *Judicial Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases,* 16 Tex. Tech L.Rev. 475 (1985).

The Administrative Record

Consideration of the Board's point of error requires scrutiny of the administrative record on Stevens' application. Our efforts at review are hindered because the record appears haphazardly in the transcript rather than as a discrete exhibit in the statement of facts.[5]

We find no formal Board order in the administrative record. Rather, the Board informed Stevens of the reason for its decision by a letter to his attorney. In the absence of a more formal document, we will treat the letter as the Board's order. Included in the letter is the Board's explanation for its decision:

> After considering all of the evidence and testimony, the Board voted that EDWARD H. STEVENS, III['s], application be denied because he lacks the present good moral character required for admission by the *Rules Governing Admission to the Bar of Texas* and by the Statutes. In support of this decision, the Board found:
>
> (1) that EDWARD H. STEVENS, III, has demonstrated a marked disrespect for the law as shown by his failure to file federal income tax returns for a number of years and by his failure to arrange for satisfaction of three (3) outstanding civil judgments based upon nonpayment of various debts;
>
> (2) that EDWARD H. STEVENS, III, has demonstrated a long-standing lack of financial responsibility in his dealings with creditors and the Internal Revenue Service;
>
> (3) that there is a clear and rational connection between the applicant's disrespect for the law and his lack of financial responsibility on the one hand and the likelihood that he will injure a client, obstruct the administration of justice or fail to carry out his responsibilities if he is licensed to practice law on the other, and;
>
> (4) that EDWARD H. STEVENS, III, does not possess the present good moral character as defined in Rule II(b) of the *Rules Governing Admission to the Bar of Texas* and as re-

4. The rule is somewhat redundant in that substantial evidence has been held to be such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

5. Proceedings before the Board are not subject to the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a (West Supp.1992). Hence, the party seeking judicial review of a Board decision need not follow APTRA § 19(d)(3), which requires the party to offer the agency record into evidence before the district court. This court has previously observed, and we reiterate, that all concerned would benefit from observance of APTRA § 19(d)(3). *See Malloy,* 793 S.W.2d at 755 n. 2.

quired by Section 82.018 [sic] (1) and (2) of the Texas Government Code.

## Review of Character Evidence

Because "good moral character" is such an ambiguous qualification for a prospective attorney, the search for substantial evidence that Stevens lacks good moral character is tricky. The Board's letter isolated two areas of misconduct that form the basis for its conclusion that Stevens lacks good moral character: (1) his failure to satisfy three outstanding civil judgments, and (2) his failure to file federal income tax returns for a number of years. From these basic facts the Board found the following ultimate facts: (1) Stevens' omissions demonstrated a lack of financial responsibility; (2) Stevens' financial irresponsibility shows a disrespect for the law; and (3) these two character traits are reasonably likely to harm Stevens' future clients, to lead to his obstructing the administration of justice, or to impede Stevens' discharge of his professional responsibilities. We shall examine each of these areas of misconduct to see if there is evidence from which the Board could reasonably conclude that Stevens lacks the necessary character to be admitted to the practice of law in this state.

However, before weighing the reasonableness of the Board's ultimate fact findings, we review the statutes and rules governing admissions to the bar. To deny admission because of a deficiency in the applicant's character, the Board must find a "clear and rational connection between a character trait of the applicant and the likelihood that the applicant would injure a client or obstruct the administration of justice if the applicant were licensed to practice law." Tex.Gov't Code Ann. § 82.028(c)(1) (West 1988). The supreme court

by rule [6] has added that a character trait likely to result in a violation of the Texas Disciplinary Rules of Professional Conduct also warrants denial of admission.[7] Rule II(b). *See State Bar of Tex. v. Wolfe,* 801 S.W.2d 202, 203 (Tex.App.—Houston [1st Dist.] 1990, no writ) (state bar rules have same effect as statutes). We must uphold the Board's decision if it is supported by substantial evidence that Stevens' misconduct would probably result in (1) injury to future clients, (2) obstruction of justice, or (3) a violation of the Disciplinary Rules.

## Unsatisfied Judgments

Under some circumstances, failure to satisfy creditors may evince a character trait that would disqualify an individual from admission to the practice of law. A law student who filed bankruptcy to avoid the student loans that put him through law school, though he had the prospect of future employability that would enable him to satisfy the debt, has been deemed to possess such a character flaw. *Application of Gahan,* 279 N.W.2d 826 (Minn.1979); *but see Florida Bd. of Bar Examiners Re Groot,* 365 So.2d 164 (Fla. 1978). Before relying on failure to satisfy creditors as evidence of a lack of good moral character, the Board should consider whether the applicant's financial irresponsibility was prompted by greed, dishonesty or fraud, or whether some compelling hardship reasonably beyond the applicant's control could have excused the default. *See generally* Kristine C. Karnezis, Annotation, *Failure to Pay Creditors as Affecting Applicant's Moral Character for Purposes of Admission to the Bar,* 4 A.L.R.4th 436 (1981). After reviewing the record that was before the district court, we find nothing from which one might reasonably conclude that Stevens' lack of fi-

---

6. Section 82.022(b) of the Government Code authorizes the supreme court to "adopt rules necessary to administer its functions and to govern the administration of the Board of Law Examiner's function relating to the licensing of lawyers." Tex.Gov't Code Ann. § 82.022(b) (West 1988).

7. Rule II(b) refers to a violation of the Code of Professional Responsibility; that Code was re-

placed by the Texas Disciplinary Rules of Professional Conduct effective January 1, 1990. *See* Tex.Disciplinary R.Prof.Conduct, *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (Vernon Supp.1992) (State Bar Rules art. X, § 9). To distinguish them from the Rules Governing Admission to the Bar, the Texas Disciplinary Rules of Professional Conduct shall be referred to as the Disciplinary Rules.

nancial responsibility relative to these judgments would probably injure a future client, obstruct the administration of justice, or lead to a violation of the Disciplinary Rules.

## Pattern of Not Filing Tax Returns

■ Stevens' failure to file federal income tax returns presents a closer question regarding his lack of good character. As the Board noted, this behavior demonstrates financial irresponsibility and disregard for legal obligations. However, labelling Stevens' behavior is not the end of the analysis. We must determine whether reasonable minds could infer that, in possessing these traits, Stevens would probably injure a client, obstruct the administration of justice, or violate the Disciplinary Rules.

On Motion for Rehearing, the Board calls our attention to a recent New York decision involving a lawyer who had failed to file state and federal income tax returns for a period of twenty years; that state's intermediate appellate court overruled a recommendation of public censure and imposed the more severe penalty of disbarment. *Matter of Chervin*, 181 A.D.2d 111, 586 N.Y.S.2d 946 (1992). We note several distinctions between that decision and the case before us. Chervin had been convicted of two counts of the misdemeanor of failing to file state income tax returns; Stevens has not been indicted, must less convicted, of any crime and there is no record evidence of any probable indictment against him. At the time of his disciplinary hearing, Chervin had not made arrangements for paying his state and federal income tax obligations; Stevens indicated to the Board that he had fulfilled all his back-taxes obligations except for a disagreement regarding the amount of penalties due. The New York court found that Chervin's repeated failure to file tax returns was motivated by "deliberate venality and dis-

honesty," in direct violation of that state's professional code of responsibility. *Id.* 586 N.Y.S.2d at 950. There is no evidence in this record of such a motivation underlying Stevens' disregard for his tax obligations.

We agree that Stevens' disregard for his tax obligations is deplorable and fails to set a good example of respect for the legal system. However, we do not find record evidence to support the conclusion that Stevens' omissions or his motives are likely to injure future clients. There is no evidence before the trial court indicating that in twenty years as an attorney Stevens has ever been the subject of any grievances, complaints or disciplinary hearings in Mississippi. Nor is there evidence that could rationally connect Stevens' failure to file tax returns with the obstruction of justice. *See State v. McVicker*, 553 S.W.2d 820, 821 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.) (failure to file income tax returns is not "prejudicial to the administration of justice"). Therefore, the Board's denial of admission can only be affirmed if there is evidence that reasonably supports the Board's conclusion that Stevens will probably violate the new Disciplinary Rules.

State Bar Rule article X, section 7 and Disciplinary Rule 8.04 form a comprehensive statement of all conduct that will subject a lawyer to discipline.[8] We have determined that Disciplinary Rules 8.04(a)(2) and (3) most nearly apply to this situation. A lawyer violates the Disciplinary Rules by committing "a serious crime or any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness in other respects." Disciplinary Rule 8.04(a)(2). Likewise, a lawyer violates the rules by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Disciplinary Rule 8.04(a)(3). Hence, our inquiry is whether a clear and rational connection exists between Stevens' non-fil-

---

8. "This Article and the Texas Code of Professional Responsibility [now Texas Disciplinary Rules of Professional Conduct] are cumulative of all laws of the State of Texas relating to the professional conduct of lawyers and to the practice of law." State Bar Rules, art. X, § 7. See also Disciplinary Rule 8.04, Comment 1: "There are three principal sources of professional obligations for lawyers in Texas: these rules, the State Bar Act, and the State Bar Rules. Article X, section 7 of the State Bar Rules contains a listing of the grounds for discipline under those Rules."

ing and either of these potential violations of the Disciplinary Rules.

Not all illegal conduct reflects adversely on fitness to practice law; the Disciplinary Rules carry forward the former distinction between "serious crimes" and other offenses. *See* Disciplinary Rule 8.04, Comment 4. "Serious crime" is defined as "any felony involving moral turpitude, any misdemeanor involving theft, embezzlement, or fraudulent misappropriation of money or other property." Disciplinary Rule 8.04(b). Standing alone, Stevens' failure to file federal income tax returns would not seem to constitute a serious crime. *See State v. McVicker*, 553 S.W.2d at 821 ("serious crime" held not to include the crime of willful failure to file an income tax return). We decline the Board's invitation to rely on isolated language in the Comment to Disciplinary Rule 8.04 to extend the definition of serious crime to include a pattern of not filing tax returns. When considering the State Bar rules, we look to the entire rule rather than to one phrase, clause, or sentence. *State Bar of Tex. v. Wolfe*, 801 S.W.2d at 204. One provision or part will not be given meaning or construction out of harmony or inconsistent with the other provisions. *Id.*

In some circumstances, a failure to file income tax returns might involve "dishonesty, fraud, deceit or misrepresentation" that would threaten a violation of Disciplinary Rule 8.04(a)(3). *See Matter of Chervin*, 586 N.Y.S.2d at 950 (lawyer convicted of failure to file tax returns was motivated by deliberate venality and dishonesty, directly violating specific disciplinary rules). But this record is devoid of any such evidence. To the contrary, letters of recommendation from the President of the Mississippi Bar Association, from a member of the Mississippi Board of Bar Commissioners, and from other prominent attorneys in the state testify to Stevens' integrity and honesty. We share the Board's concerns about Stevens' financial irresponsibility and disregard for his tax obligations. We sympathize with the difficulty the Board faces in assessing such an ambiguous quality as "good moral character." On the state of the record presented to the trial court, however, we hold Stevens met his burden of demonstrating that the Board did not reasonably conclude his misconduct would probably result in injury to future clients, the obstruction of justice, or a disciplinary violation.

■ The vagueness of the "good moral character" standard elevates the importance of the Board's reasonably connecting basic facts to ultimate facts and ultimate facts to the Board's final decision. This is necessary to prevent arbitrary agency action and injustice. In aid of its future efforts to measure the good moral character of applicants, the Board might invoke its rule-making powers to define under what circumstances failure to satisfy financial obligations or file income tax returns would reasonably justify drawing any of the conclusions necessary to deny admission to practice law in this state.

## CONCLUSION

For the reasons given, we overrule the Board's point of error and affirm the judgment of the district court.