The BOARD OF LAW EXAMINERS OF
the STATE of Texas, Petitioner,

v.

Edward H. STEVENS, III, Respondent.

No. D–3694.

Supreme Court of Texas.

Jan. 5, 1994.

Kevin Wayne Cole, C. Robert Heath, Austin, for petitioner.

Nicolai von Kreisler, Susan J. Haney, Austin, for respondent.

CORNYN, Justice, delivered the opinion of the Court, in which all Justices join.

This controversy between an applicant for admission to the Texas Bar and the Board of Law Examiners ("Board" or "BLE") requires us to interpret the minimum standards for moral character and fitness contained in the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, and to clarify the process by which courts should review Board decisions. We hold that the court of appeals misinterpreted the Disciplinary Rules and misapplied the standard of review. Accord-

ingly, we reverse the judgment of the court of appeals and affirm the Board's decision.

I

Edward H. Stevens, III, who was licensed to practice law in Mississippi in 1969, applied in August 1985 to join the Texas Bar. The bar application required Stevens to disclose whether he had "any debts, including student loans, which are more than 90 days past due." Although Stevens had failed to file a single federal income tax return since 1972, would not file one in 1986, and owed taxes, penalties, and interest to the Internal Revenue Service, he did not disclose this information on his bar application. Stevens did disclose two unsatisfied judgments. While his application was pending, a third judgment was entered against him on account of an overdue debt. The Board nevertheless learned of Stevens's failure to file tax returns, held a hearing, and decided in 1988 that Stevens did not possess the moral character and fitness necessary to qualify for membership in the Texas Bar. Stevens sought judicial review of the Board's decision in a Travis County district court, which held that the Board's decision was not supported by "substantial evidence,"[1] and remanded the case to the Board for further proceedings. The court of appeals affirmed. 850 S.W.2d 558.

At the hearing before the Board, Stevens testified that he did not have the means to satisfy the judgments against him, but he anticipated that he would pay these debts out of any inheritance he would receive from his mother.

Stevens also disclosed that the only income tax he had paid in the fourteen years from 1972 to 1986 was that withheld by his employer for the five years he worked for the Army Corps of Engineers. He was in private practice throughout the remainder of this period, but paid no income tax and filed no returns. Stevens asserts that he "did not

---

1. Rule XV(i)(5) of the RULES GOVERNING ADMISSION TO THE BAR OF TEXAS says, "The court shall determine ... whether or not the Board's decision is reasonably supported by substantial evidence." At the time of the hearing, the same language was found in Rule XI(m).

intend" to defraud the government, but claimed that an accountant to whom he had given his tax documents in 1973 failed to prepare his returns. By the time Stevens recovered his tax-related papers, he was two years behind, and "afraid" to file the returns late.

In 1986, about the time he filed his bar application, Stevens acknowledged that there would be "a day of reckoning." By the time the Board held its hearing in 1988, Stevens had filed a late return for 1986 and returns for the seven previous years. He expressed his desire "to get straight with the IRS," and testified that he had filed his returns before he was contacted by the IRS. He presented evidence that he paid his taxes for seven of the fourteen years, but that he continues to dispute the amount of interest and penalties he owes for three of the seven years. The federal government has not prosecuted him.

The Board informed Stevens of its adverse decision by letter, in which it also explained its decision.[2] The Board concluded that Stevens does not possess the necessary good moral character on two grounds—that he "has demonstrated a marked disrespect for the law" and he "has demonstrated a longstanding lack of financial responsibility." The trial court held that this decision was not supported by "substantial evidence," and the court of appeals affirmed, stating:

We sympathize with the difficulty the Board faces in assessing such an ambigu-

ous quality as "good moral character." On the state of the record presented to the trial court, however, we hold Stevens met his burden of demonstrating that the Board did not reasonably conclude his misconduct would probably result in injury to future clients, the obstruction of justice, or a disciplinary violation.

850 S.W.2d at 564.

## II

■ Justice Frankfurter once observed that "all the interests of [humanity] that are comprised under the constitutional guarantees given to 'life, liberty and property' are in the professional keeping of lawyers." *Schware v. Board of Bar Exams.*, 353 U.S. 232, 247, 77 S.Ct. 752, 760, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring).

A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Lawyers, as guardians of the law, play a vital role in the preservation of society. * * * A consequent obligation of lawyers is to maintain the highest standards of ethical conduct.

TEX.DISCIPLINARY R.PROF.CONDUCT, pmbl. para. 1. (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 1994) (State Bar Rules art. X, § 9).[3] By the nature of their profession, lawyers occupy a position of public trust and confidence, and

---

2. After considering all of the evidence and testimony, the Board voted that EDWARD H. STEVENS, III['s] application be denied because he lacks the present good moral character required for admission by the *Rules Governing Admission to the Bar of Texas* and by the Statutes. In support of this decision, the Board found:

(1) that EDWARD H. STEVENS, III, has demonstrated a marked disrespect for the law as shown by his failure to file federal income tax returns for a number of years and by his failure to arrange for satisfaction of three (3) outstanding civil judgments based upon nonpayment of various debts;
(2) that EDWARD H. STEVENS, III, has demonstrated a longstanding lack of financial responsibility in his dealings with creditors and the Internal Revenue Service;
(3) that there is a clear and rational connection between the applicant's disrespect for the

law and his lack of financial responsibility on the one hand and the likelihood that he will injure a client, obstruct the administration of justice or fail to carry out his responsibilities if he is licensed to practice law on the other, and;
(4) that EDWARD H. STEVENS, III, does not possess the present good moral character as defined in Rule II(b) of the *Rules Governing Admission to the Bar of Texas* and as required by Section 82.018 [sic] (1) and (2) of the Texas Government Code.

3. When the BLE reached its decision concerning Stevens's application, the Texas Code of Professional Responsibility, *see* State Bar Rules, art. X, § 9, TEX.GOV'T CODE ANN. tit. 2, subtit. G app. (Vernon 1988) (repealed Jan. 1, 1990), was still in effect. The TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT became effective January 1, 1990, by order of the Texas Supreme Court dated October 17, 1989.

have a concomitant obligation to refrain from misbehavior and to carry out their professional duties with reasonable skill and personal integrity.

It would be small comfort to the public if the only ethical standard for admission to the Texas Bar were an absence of convictions involving serious crimes and crimes of moral turpitude. Rather than mere absence of gross misbehavior, bar admission affirmatively requires "good moral character" and "fitness" to practice law. RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(a) (1992). TEXAS DISCIPLINARY R.PROF.CONDUCT terminology (1989) expressly defines "fitness" as "those qualities ... that enable a person to discharge a lawyer's responsibilities to clients in conformity with [these rules]. Normally a lack of fitness is indicated most clearly by a persistent inability to discharge, or unreliability in carrying out, significant obligations." *See also*, RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b) (1992) (purpose of assessment of good moral character is "to exclude from the practice of law those persons possessing character traits ... [that] usually involve either dishonesty or lack of trustworthiness in carrying out responsibilities").

■ The Board of Law Examiners supervises bar admissions and thereby plays a key role in maintaining the integrity and character of the Texas Bar. By statute, law examiners must be licensed to practice law in Texas and have practiced law or served as a judge for at least ten years. TEX.GOV'T CODE ANN. § 82.001 (Vernon 1988); TEX. CONST. art. 5, § 2. This court has vested the Board with considerable discretion when applying promulgated admission standards to evaluate applicants.

We recognize the difficulty inherent in assessing "good moral character" to practice law. As the court of appeals emphasized, "good moral character," standing alone, is "easily adapted to fit personal views and

predilections, [and] can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." 850 S.W.2d at 560 (quoting *Konigsberg v. State Bar*, 353 U.S. 252, 263, 77 S.Ct. 722, 728, 1 L.Ed.2d 810 (1967)). However, the Board of Law Examiners is not without guidance in evaluating "good moral character." TEXAS GOV'T CODE ANN. § 82.028(c) (Vernon 1988), which authorizes the Board to conduct investigations, expressly circumscribes the power of the Board in making this determination:

> The board may not recommend denial of a license and the supreme court may not deny a license to an applicant because of a deficiency in the applicant's moral character or fitness unless:
>
> (1) the board finds a clear and rational connection between a character trait of the applicant and the likelihood that the applicant would injure a client or obstruct the administration of justice if the applicant were licensed to practice law....

TEX.GOV'T CODE ANN. § 82.028(c) (Vernon 1988). The RULES GOVERNING ADMISSION TO THE BAR OF TEXAS, promulgated under TEX. GOV'T CODE § 82.022(b) (Vernon 1988), have "the same effect as statutes," *see State Bar v. Wolfe*, 801 S.W.2d 202, 203 (Tex.App.—Houston [1st Dist.] 1990, no writ), and provide further guidance:

> ■ Good moral character is a functional assessment of character and fitness of a prospective lawyer. The purpose of requiring an Applicant to possess present good moral character is to exclude from the practice of law those persons possessing character traits that are *likely to result in injury to future clients, in the obstruction of the administration of justice, or in a violation of the [Disciplinary Rules]*. These character traits usually involve either dishonesty or lack of trustworthiness in carrying out responsibilities. There *may be other character traits* that are

Although the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT and the Code of Professional Responsibility differ in some respects, there is no difference between them that would affect the

outcome of this case. Therefore, we will discuss Stevens's ethical duties in the context of the current disciplinary rules, but cite to the Code of Professional Responsibility as appropriate.

relevant in the admission process, but *such traits must have a rational connection with the Applicant's present fitness or capacity to practice law* and accordingly *must relate to the legitimate interests of Texas* in protecting prospective clients and in safeguarding the system of justice within Texas.

RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b)[4] (1992) (emphasis added). These rules make it clear that the Board must be guided in its assessment by (1) the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT and (2) legitimate state interests in protecting prospective clients and the Texas justice system. Because the Board must find a "clear and rational connection" between the applicant's character trait and the threatened harm, TEX.GOV'T CODE § 82.028(c) (Vernon 1988), it is not permitted to make arbitrary or unreasoned judgments. *See, e.g., Schware v. Board of Bar Exams.*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

Although it may initially seem appealing, as the court of appeals suggested, to generate detailed lists of actions that will result in discipline for an attorney or disqualification for a bar applicant, such a list is both impracticable and undesirable. The Preamble to the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, based on the AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT, recognizes this principle:

In the nature of law practice, conflicting responsibilities are encountered.... The Texas Disciplinary Rules ... prescribe terms for resolving such tensions.... The Rules and their Comments constitute a body of principles upon which the lawyer can rely for guidance in resolving such issues through the exercise of sensitive professional and moral judgment. * * * The Texas Disciplinary Rules ... are rules of reason. [They] define proper conduct for purposes of professional discipline. * * * The rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes

relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general.... The rules and Comments do not, however, exhaust the moral and ethical considerations that should guide a lawyer, for no worthwhile human activity can be completely defined by legal rules. * * * These rules make no attempt to prescribe either disciplinary procedures or penalties for violation of a rule.

TEX.DISCIPLINARY R.PROF.CONDUCT, pmbl. paras. 7, 10–11, 14 (1989). The nature and complexity of law practice preclude an exhaustive list of actions warranting discipline and the sanctions for each. Likewise, the diversity of bar applicants renders advance preparation of an exhaustive list of disqualifying factors problematic. On balance, we conclude that the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT provide reasonably comprehensive standards to guide the Board's discretion.

### III

■ When reviewing a Board decision, courts are bound to apply the "substantial evidence" standard. RULES GOVERNING ADMISSION TO THE BAR OF TEXAS XV(i)(4), (5) (1992). Although the Administrative Procedure Act ("APA"), 73rd Leg., R.S., ch. 268, § 1, 1993 Tex.Sess.Law Serv. 587 (Vernon) (to be codified as TEX.GOV'T CODE ANN. §§ 2001.001–2001.902) (formerly Administrative Procedure and Texas Register Act), technically, does not govern Board procedures, the APA sections addressing the scope of judicial review under the substantial evidence rule are instructive. APA § 2001.174 states that a trial court applying the substantial evidence rule "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." In relevant part, APA § 2001.174 also provides that a trial court shall reverse or remand an agency decision only if "the administrative findings, inferences, conclusions, or decisions are ... (E) not reasonably supported by

4. Formerly rule II(b).

substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion...." APA § 2001.901, and Rule XV(i)(6) of the Admission Rules, governing appeals from the trial court, use virtually identical language.

Because the determination of a candidate's character and fitness is a decision "committed to [Board] discretion," neither the trial court nor the appellate courts may "substitute [their] judgment" for that of the Board. *See* APA § 2001.174; *Railroad Comm'n v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 41 (Tex.1991). Our duty, like that of the courts below, in reviewing the BLE's decision is to determine whether substantial evidence supports it. If reasonable minds could have reached the conclusion that the Board reached on the record presented, then we must uphold its decision. *See State Bd. of Dental Exams. v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988); *Dotson v. State Bd. of Medical Exams.*, 612 S.W.2d 921, 922 (Tex.1981).

## IV

### A

After reviewing Stevens's application and other evidence, the Board identified two negative character traits that are "likely to result in injury to future clients ... or in a violation of the [Disciplinary Rules]," RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b) (1992), namely, that Stevens "has demonstrated a marked disrespect for the law," and that he "has demonstrated a longstanding lack of financial responsibility."[5] So long as substantial evidence supports the Board's findings, its decision meets the statutory standard. This "substantial evidence" standard of review applies both to the Board's identification of the applicant's character traits and to its finding that the applicant's

character traits are likely to cause future injuries to clients or violations of the Disciplinary Rules.

█ The court of appeals, in determining whether sufficient evidence supported the conclusions of the Board, stated, "We must uphold the Board's decision if it is supported by substantial evidence that Stevens' [past] misconduct would probably result in (1) injury to future clients, ... or (3) a violation of the Disciplinary Rules." 850 S.W.2d at 562. This statement, however, mischaracterizes the legal standard by which Stevens's conduct must be judged. The statutory standard requires "a clear and rational connection between *a character trait of the applicant* and the likelihood that the candidate would injure a client [or violate the Disciplinary Rules]." TEX.GOV'T CODE § 82.028(c)(1) (Vernon 1988) (emphasis added). Rather than determining whether particular past misconduct will be repeated or will directly result in future injury or disciplinary violations, the statute requires the Board to determine whether those acts show that an applicant has a *negative character trait* that is likely to cause the applicant to injure a client or violate the disciplinary rules. Such a character trait "usually involve[s] either dishonesty or lack of trustworthiness in carrying out responsibilities," but "other character traits [may be] relevant." RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b) (1992).

### B

The court of appeals further deemed it necessary to determine whether Stevens's failure to file tax returns supported the conclusion that he "will probably violate the new Disciplinary Rules." 850 S.W.2d at 563. The court held: "Standing alone, Stevens' failure to file federal income tax returns would not seem to constitute a serious

---

5. The record also shows that Stevens, fully aware of his obligations to the Internal Revenue Service and three judgment creditors, did not fully disclose his debts on his Texas Bar application. However, the Board did not list nondisclosure or a violation of TEX.DISCIPLINARY R.PROF.CONDUCT 8.01 (1989) among its reasons for denying Stevens admission to practice. At the time Stevens applied, DR 1–101(A) of the Texas Code of Professional Responsibility was in effect, but was no less clear about his obligations.

crime," or otherwise to violate Tex.Disciplinary R.Prof.Conduct 8.04(a)(2) (1989). 850 S.W.2d at 564. We need not determine here whether the failure to file tax returns constitutes a "serious crime." However, we hold that the court of appeals misconstrued Tex.Disciplinary R.Prof.Conduct 8.04 (1989).

■ Texas Disciplinary R.Prof.Conduct 8.04 (1989) is based on Rule 8.4 of the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules"), which states, in relevant part:

It is professional misconduct for a lawyer to: ...

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ...

However, Tex.Disciplinary R.Prof.Conduct 8.04 (1989) contains materially different language (italics indicate Texas changes to the ABA Model Rules): [6]

(a) A lawyer shall not: ...

(2) commit a *serious crime, or commit any other* criminal act that reflects adversely on the lawyer's ... fitness as a lawyer in other respects;

(3) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; ...

(b) As used in subsection (a)(2) of this Rule, *"serious crime" means any felony involving moral turpitude, any misdemeanor involving theft, embezzlement, or fraudulent misappropriation of money or other property, or any attempt, conspiracy, or solicitation of another to commit any of the foregoing.*

The comments to both Texas Rule 8.04 and ABA Model Rule 8.4 define "professional

misconduct" to include criminal acts, serious or not, that "reflect[ ] adversely on the lawyer's ... fitness [to practice law]." Comment 5 to Tex.Disciplinary R.Prof.Conduct 8.04, further explains the conduct subject to discipline under the Texas rule:

Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for those offenses that indicate lack of those characteristics relevant to *his fitness for the practice of law, as "fitness" is defined in these rules.* <u>A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation</u> *<u>that legitimately could call a lawyer's overall fitness to practice into question.</u>*

Tex.Disciplinary R.Prof.Conduct 8.04 cmt. 5 (1989) (italics indicate Texas changes to ABA Model Rule 8.4 cmt. 1; underline indicates emphasis added). Texas amended the comments to ABA Model Rule 8.4 substantially in the process of harmonizing Rule 8.04 with Texas disciplinary procedure. Comments 6 and 7 to Tex.Disciplinary R.Prof.Conduct 8.04 closely track comments 2 and 3 to ABA Model Rule 8.4, while Comments 1, 2, and 3 to Tex.Disciplinary R.Prof.Conduct 8.04 describe how portions of Rule 8.04 correspond to sections of the former State Bar Rules. Much of the language from ABA Model Rule 8.4 cmt. 1 is contained Tex.Disciplinary R.Prof.Conduct 8.04 cmts. 4, 5 (1989). However, all specific examples of "professional misconduct" from ABA Model Rule 8.4 cmt. 1 are conspicuously absent from Tex.Disciplinary R.Prof.Conduct 8.04 cmts. 4, 5 (1989), including the following:

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud *and the offense of willful failure to file an income tax return.*

ABA Model Rule 8.4 cmt. 1 (emphasis added). The Texas Rules do not indicate a

---

6. The Texas rules are intended to correspond with relevant sections of Article X of the Texas State Bar Rules.Tex.Disciplinary R.Prof.Conduct 8.04 cmt. 2. Since May 1, 1992, however, the Texas Rules of Disciplinary Procedure have superseded the relevant sections of Article X.

reason for the omission of specific examples, and we do not believe this omission should be construed to suggest that these offenses are not subject to discipline. In our view, there is no more reason to assign significance to the omission of willful failure to file a tax return than there is to the omission of fraud or breach of trust. Because Texas defines criminal misconduct as "a serious crime, or ... *any other criminal act* that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," willful failure to file a tax return constitutes attorney misconduct subject to discipline. TEX.DISCIPLINARY R.PROF.CONDUCT 8.04(a)(2) (1989) (emphasis supplied).

The court of appeals distinguished this case from *In re Chervin,* 181 A.D.2d 111, 586 N.Y.S.2d 946 (1992) (disbarment required as a matter of law for lawyer's failure to file returns for twenty years), on the ground that the New York court found Chervin was motivated by "deliberate greed and dishonesty," while Stevens testified that he was "afraid" of the IRS, and "did not intend" to defraud the government. We find this reasoning unpersuasive for several reasons. First, the court of appeals must not substitute its judgment for that of the Board with regard to factual determinations. *State Banking Bd. v. Allied Bank Marble Falls,* 748 S.W.2d 447 (Tex.1988); *Sizemore,* 759 S.W.2d at 116.

■ Second, the crime of willful failure to file an income tax return does not require proof of intent to defraud the government. *See, e.g., Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Willful failure to file an income tax return, 26 U.S.C. § 7203 (Supp.1993), is a misdemeanor, distinguished from the felony of willful attempt to evade or defeat a tax. 26 U.S.C. § 7201 (1988); *United States v. Ming,* 466 F.2d 1000, 1004 (7th Cir.), *cert. denied,* 409

U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176, *reh'g denied,* 409 U.S. 1051, 93 S.Ct. 514, 34 L.Ed.2d 504 (1972). Moreover, willful failure to file a tax return is generally recognized as a crime of moral turpitude in disbarment proceedings, *In re Pohlman,* 248 N.W.2d 833, 835 (N.D.1976); *State Bd. of Law Exam. v. Holland,* 494 P.2d 196, 197 (Wyo.1972); *In re McKechnie,* 214 Or. 531, 330 P.2d 727, 728 (1958); *Attorney Grievance Comm. v. Barnes,* 286 Md. 474, 408 A.2d 719, 723 (1979); *State v. Fitzgerald,* 165 Neb. 212, 85 N.W.2d 323, 327 (1957); *In re Norrid,* 100 N.M. 326, 326, 670 P.2d 580, 580 (1983), or as otherwise warranting discipline. *In re Rohan,* 21 Cal.3d 195, 145 Cal.Rptr. 855, 857, 578 P.2d 102, 104 (1978); *People v. Borchard,* 825 P.2d 999, 100 (Colo.1992). There is no doubt that Stevens knew of his obligation to file his tax returns in 1972, that he waited for two years to retrieve his tax-related papers from his accountant, and that he did not file returns for fourteen years. The Board could reasonably conclude that Stevens, with knowledge of his obligations, willfully chose to delay filing his returns. Stevens's motives are irrelevant in determining whether he willfully failed to file a tax return.

Third, even assuming that Stevens was motivated by "fear" rather than "greed," his failure to file should not be excused. Debilitating fear of any tribunal is not a laudable trait for a lawyer. In the zealous representation of clients, the Disciplinary Rules sometimes require lawyers to act with extraordinary courage despite opposing state action or public opinion. Finally, even if Stevens's behavior were not criminal,[7] a fourteen-year failure to file income tax returns constitutes dishonest conduct that would violate TEX.DISCIPLINARY R.PROF.CONDUCT 8.04(a)(3) (1989).

### C

■ Although the determination that Stevens has engaged in past misconduct is pro-

---

7. The BLE determines whether an applicant has engaged in criminal conduct for different purposes, and according to different evidentiary standards, than prosecutors or courts. Although an acquittal in court would be highly probative evidence before the BLE, the BLE must still exercise independent judgment in applying the

TEX.DISCIPLINARY R. OF PROF.CONDUCT and the RULES GOVERNING ADMISSION TO THE BAR OF TEXAS to give effect to the legitimate state interests of "protecting prospective clients and safeguarding the system of justice within Texas." RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b) (1992).

bative of his character and fitness to practice law in Texas, it is not dispositive. There must additionally be "substantial evidence" of a "clear and rational connection between a character trait of the applicant and the likelihood that the applicant would injure a client [or violate the DISCIPLINARY RULES] if the applicant were licensed to practice law ..." TEX.GOV'T CODE § 82.028(c); RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b), XV(i)(5) (1992). The most salient character traits "involve either dishonesty or lack of trustworthiness in carrying out responsibilities." RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b) (1992).

The record contains substantial evidence in support of the Board's conclusion that Stevens "has demonstrated a marked disrespect for the law." As a licensed attorney, fully aware of his obligation to file and pay taxes, Stevens failed for fourteen years to carry out one of the most basic and universal duties of citizenship. We hold that the substantial evidence that he repeatedly disregarded his legal duties and the standards of professional conduct supports the Board's conclusion.

Fourteen years of failure to pay taxes and the failure to satisfy three overdue judgment debts also constitute substantial evidence that Stevens "has demonstrated a longstanding lack of financial responsibility." On this point, the court below agrees. 850 S.W.2d at 564. This is, furthermore, substantial evidence that Stevens suffers from a "persistent inability to discharge, or unreliability in carrying out, significant obligations." TEX.DISCIPLINARY R.PROF.CONDUCT terminology (1989) (definition of "fitness").

Because an attorney must act as a counsellor and advisor, see TEX.DISCIPLINARY R.PROF.CONDUCT 2.01, 1.01, 1.02 (1989), and is frequently entrusted with responsibility for clients' assets and affairs, see TEX.DISCIPLINARY R.PROF.CONDUCT 1.14 (1989), it is apparent to us that there is a "clear and rational connection" between disrespect for the law and financial irresponsibility on the one hand, and "the likelihood that [an] applicant would injure a client," on the other. TEX.GOV'T CODE ANN. § 82.028(c)(1) (Vernon 1988). "Substantial evidence" review of the "clear and rational connection" issue presents a mixed question of fact and law, and requires case-by-case examination of the facts rather than blanket rules barring from practice all applicants, for example, who possess indicia of "financial irresponsibility." However, given the evidence of Stevens's negative character traits and the relationship of these traits to the duties lawyers are reasonably expected to perform, we hold that substantial evidence supports the Board's conclusion that Stevens would probably injure a client or violate the ethical rules were he admitted to practice in Texas.

Although Stevens presented countervailing evidence of his good character, including evidence of prior public service and letters of recommendation,[8] this evidence does not conclusively negate the evidence that Stevens fails to meet the minimum standards under our disciplinary rules.

We reverse the judgments of the court of appeals and of the trial court, and affirm the order of the Board of Law Examiners.

---

8. Stevens served as a member of the Mississippi House of Representatives for four years in the early 1960s, and also as a military officer in Vietnam. At his hearing, Stevens presented letters of recommendation from a member of the Mississippi Board of Bar Commissioners, the president of the Mississippi State Bar Association, a district judge, former members of the Mississippi legislature, and a former member of the Federal Energy Regulatory Commission.