ACCEPTED
15-25-00036-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/29/2025 11:34 AM
CHRISTOPHER A. PRINE
CLERK

CASE NO. 15-25-00036-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/29/2025 11:34:23 AM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS AT AUSTIN

JORGE R. GUEVARA, M.D.,
*Appellant,*

v.

TEXAS MEDICAL BOARD,
*Appellee.*

## APPELLEE TEXAS MEDICAL BOARD'S BRIEF

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**ERNEST C. GARCIA**
Chief, Administrative Law Division

**KATHY JOHNSON**
State Bar No. 24126964
Assistant Attorney General
Ted A. Ross
Assistant Attorney General
State Bar No. 24008890
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4164
Facsimile: (512) 320-0167
kathy.johnson@oag.texas.gov
ted.ross@oag.texas.gov

ATTORNEYS FOR APPELLEE
TEXAS MEDICAL BOARD

ORAL ARGUMENT NOT REQUESTED

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ....................................................... 4

IDENTITY OF PARTIES & COUNSEL .................................... 7

REFERENCES ....................................................................... 8

STATEMENT REGARDING ORAL ARGUMENT ................................ 9

ISSUES PRESENTED .......................................................... 10

STATEMENT OF FACTS ...................................................... 11

SUMMARY OF THE ARGUMENT ....................................... 14

STANDARD OF REVIEW ...................................................... 15

ARGUMENT .......................................................................... 18

I.      The trial court correctly affirmed TMB's Final Order,
        finding that TMB did not exceed its statutory authority
        in disciplining Dr. Guevara........................................... 18

II.     Substantial evidence supports the findings of violation
        TMB found in its Final Order. ....................................... 23

        A.    Dr. Guevara failed to ensure that MAB established
              and maintained a quality assurance and control
              program ............................................................. 26

        B.    Dr. Guevara failed to ensure that MAB employed
              qualified personnel to perform mammography
              imaging................................................................ 28

        C.    Dr. Guevara failed to ensure that MAB provided
              the results of the mammography reports to each of
              his patients......................................................... 30

III. The trial court correctly affirmed TMB's Final Order because it was not arbitrary nor capricious when it reached a reasonable result. ...........................................31

CONCLUSION ..................................................................38

CERTIFICATE OF COMPLIANCE......................................40

CERTIFICATE OF SERVICE..............................................40

APPENDICES ...................................................................41

# INDEX OF AUTHORITIES

**Cases**

*Aleman v. Tex. Med. Bd.*,
573 S.W.3d 796 (Tex. 2019) ..................................................... 20, 21, 22

*Anderson-Clayton Bros. Funeral Home, Inc. v. Strayhorn*,
149 S.W.3d 166 (Tex. App.—Austin 2004, pet. denied) ................. 17, 18

*Bd. of Law Exam'rs v. Stevens*,
868 S.W.2d 773 (Tex. 1994) ..................................................... 16, 17, 35

*City of El Paso v. Pub. Util. Comm'n*,
883 S.W.2d 179 (Tex. 1994) ........................................................... 33

*Lane v. Tex. Med. Bd.*,
No. 03-21-00593-CV, 2023 WL 4214945 (Tex. App.—Austin
June 28, 2023, pet. denied) (mem. op.) ........................................ 21, 23

*R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*,
336 S.W.3d 619 (Tex. 2011) ............................................................ 17

*Scally v. Tex. State Bd. of Med. Exam'rs*,
351 S.W.3d 434 (Tex. App.—Austin, 2011) (pet. denied) .............. 15, 16

*Sergeant Enter., Inc. v. Strayhorn*,
112 S.W.3d 241 (Tex. App.—Austin 2003, no pet.) ............................ 17

*State v. Pub. Util. Comm'n*,
883 S.W.2d 190 (Tex. 1994) ............................................................ 16

*Tex. State. Bd. of Med. Exam'rs v. Birenbaum*,
891 S.W.2d 333 (Tex. App.—Austin 1995, writ denied) ...................... 17

**Statutes**

Tex. Gov't Code
§ 2001.174 ......................................................................................... 15
§ 2001.174(2)(A) ............................................................................... 16

§ 2001.1721(a) ........................................................................ 18
§ 2001.1721(b) ................................................................. 18, 20

Tex. Health & Safety Code
§ 193.005(h) .......................................................................... 20
§ 401.422(a) ........................................................................... 24
§ 401.423(b) ........................................................................... 24
§ 401.424(a)(3) ....................................................................... 24
§ 401.424(a)(4)(D) .................................................................. 24
§ 401.426 ............................................................................... 24

Tex. Occ. Code
ch. 151 .................................................................................. 15
§ 151.001(4) ........................................................................... 33
§ 151.002(9) ........................................................................... 21
§ 151.002(13) ................................................................... 19, 21
§ 151.003 ............................................................................... 33
§ 164.001 ............................................................................... 34
§ 164.001(b)(3) ....................................................................... 34
§ 164.001(e) ........................................................................... 34
§ 164.001(f) ............................................................................ 34
§ 164.051-.054 ........................................................................ 34
§ 164.051(a)(1) ............................................................. 18, 19, 37
§ 164.052(a)(5) ............................................................. 18, 19, 37
§ 164.053(a)(1) ............................................................. 18, 34, 37
§ 164.053(a)(8) ................................................................. 19, 37
§ 164.053(a)(9) ................................................................. 19, 37
§ 601.002(6)-(7) ...................................................................... 25

**Rules**
22 Tex. Admin. Code
§ 190.14(1) ....................................................................... 34, 35
§ 190.14(9) ....................................................................... 35, 38
§ 190.15 ................................................................................. 35
§ 190.15(a) ............................................................................. 36

25 Tex. Admin. Code

§ 289 ............................................................................ 20, 24, 25, 26
§ 289.226(n)(2) ............................................................. 20, 25, 38
§ 289.230 ............................................................................ 25
§ 289.230(r)(2) ............................................................. 19, 20, 28
§ 289.230(t)............................................................................ 30
§ 289.230(t)(1) ............................................................................ 30
§ 289.230(t)(2) ............................................................. 19, 20, 30
§ 289.230(u)............................................................................ 26
§ 289.230(u)(1)(A)............................................................................ 26
§ 289.230(u)-(w) ............................................................. 19, 20, 26
§ 289.230(v)(6)............................................................................ 27
§ 289.230(v)(7)............................................................................ 26
§ 289.230(v)(9)-(14) ............................................................................ 27
§ 289.230(w) ............................................................................ 27
§ 289.234 ............................................................................ 25

42 U.S.C. § 263b ............................................................................ 24
42 U.S.C. § 263b(f)............................................................................ 24
42 U.S.C. § 263b(m)............................................................................ 24

**Other**

Senate Bill 14 ............................................................................ 18

## IDENTITY OF PARTIES & COUNSEL

**Parties**

**Appellant Jorge R. Guevara, M.D.**
**Appellate Counsel:**
Jason Davis
E-mail: *jdavis@dslawpc.com*
Hayley Ellison, *Lead Counsel*
E-mail: *hellison@dslawpc.com*
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas 78204
Tel.: (210) 853-5882

**Trial Counsel:**
John J. Rivas
Ethan Yat Fai Lau
RIVAS GOLDSTEIN, LLP

**Appellee Texas Medical Board**
**Appellee's Trial and Appellate Counsel:**
Kathy Johnson
Assistant Attorney General
E-mail: *Kathy.Johnson@oag.texas.gov*
Ted Ross
Assistant Attorney Geenral
E-mail: *Ted.Ross@oag.texas.gov*
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711
Tel.: (512) 475-4191

# CITATION REFERENCES

**Administrative Record**

A.R. at [TMB ###]                    Administrative Record

C.R. [*page #*]

Tr. [*Page #*: *Line #*]:            SOAH contested case hearing transcript

Staff Ex. [#]:                       TMB Staff contested case hearing exhibits

App. Tab [#]                         Appendix attached to this brief

# OTHER REFERENCES

**ALJs**                             The SOAH Administrative Law Judges

**Dr. Guevara:**                     Appellant, Jorge Guevara, M.D.

**Final Order**                      The TMB Final Order entered August 18, 2023

**PFD**                              The Administrative Law Judge's Proposal for Decision signed on May 3, 2023

**RSO**                              Radiation Safety Officer

**SOAH**                             The State Office of Administrative Hearings

**TMB:**                             Appellee, Texas Medical Board

## STATEMENT REGARDING ORAL ARGUMENT

The TMB does not request oral argument in this appeal because the factual issues are straightforward, and the legal issues have previously been addressed by the courts. However, the TMB requests the opportunity to participate if the Court sets oral argument.

## ISSUES PRESENTED

1. Did the trial court err when it affirmed TMB's Final Order finding that the TMB acted within its statutory authority when it disciplined Dr. Guevara?

2. Did the trial court err when it affirmed TMB's Final Order finding that it was supported by substantial evidence when Dr. Guevara's failures as a Radiation Safety Officer (RSO) were connected to his practice of medicine?

3. Did the trial court err when it affirmed TMB's Final Order finding that TMB did not act arbitrarily or capriciously when it disciplined Dr. Guevara by barring Dr. Guevara from being associated with any imaging program, including owning, operating or acting as RSO for any imaging program?

## STATEMENT OF FACTS

Dr. Guevara served as the radiation safety officer for his practice, Medical Associates of Brownsville (MAB). As the radiation safety officer (RSO), Dr. Guevara had the responsibility to ensure that MAB personnel in the radiology department complied with all regulations and received adequate training. In January 2019, Department of State Health Services (DSHS) conducted an investigation of MAB. The investigation revealed that MAB had failed to establish and maintain a mammography medical outcome program and failed to maintain a quality assurance program. A.R. at TMB1215. MAB had also hired unqualified mammography technicians, who had taken low quality mammography images. DSHS reviewed a sample of MAB's mammography images and found that 100% of the films were of poor quality, did not meet the standard of the accrediting body, and were of such poor quality that they did not reveal whether or not the patient had breast cancer. A.R. at TMB1216.

After completing its investigation, DSHS brought an enforcement action against MAB at SOAH.[1] DSHS's enforcement action against MAB

---

[1] SOAH Docket Number 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.

is not under judicial review in this case. As a result of its investigation, DSHS also referred Dr. Guevara, a licensed medical doctor, to the TMB for disciplinary action. The TMB pursued disciplinary action against Dr. Guevara by filing a contested case at SOAH. A.R. at TMB1.

SOAH held a hearing on the merits on December 12, 2022. The Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) on May 3, 2023. A.R. at TMB1146-1174. After both parties filed exceptions and replies to certain findings of fact (FOF), the ALJ adopted all of the TMB's exceptions on June 6, 2023. A.R. at TMB1170-73. The TMB then considered the ALJ's Proposal for Decision and exceptions letter; TMB adopted all of the ALJ's FOFs and conclusions of law (COLs) as identified in the PFD and exceptions letter. The TMB ultimately issued its Final Order in SOAH Docket Number 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 on August 18, 2023. A.R. at TMB1213-25.

The TMB Final Order states that Dr. Guevara:

1) shall not own, operate, act as radiation safety officer for, act as medical director for, or otherwise be associated with any imaging program including a program that performs mammography, and any facility where imaging studies, including but not limited to mammograms are performed or interpreted;

2) shall not perform any imaging services;

3) shall not supervise or delegate to any healthcare personnel engaged in the performance of imaging studies.

A.R. at TMB1220-21.

Dr. Guevara sought judicial review by filing Plaintiff's Original Petition, *Ex Parte* Application for Temporary Restraining Order and Temporary Injunction, and Request for Disclosure on October 12, 2023. The trial court issued a Temporary Restraining Order regarding the TMB Final Order. A Temporary Injunction Hearing took place on November 14, 2023. The Court denied Dr. Guevara's request for a Temporary Injunction on November 17, 2023. On December 6, 2023, Dr. Guevara perfected an interlocutory appeal of the court's Order Denying Plaintiff's Application for Temporary Injunction. Subsequently, Dr. Guevara dismissed his appeal on January 8, 2024.

A hearing on the merits took place at the trial court on November 13, 2024. C.R. 379. Judge Connor signed the final judgment of the trial court on December 30, 2024, finding that TMB's Final Order was supported by substantial evidence and that TMB acted within its statutory authority. C.R. 380. Dr. Guevara requested FOFs and COLs

from the trial court, which Judge Thomas[2] denied. C.R. 381-384. Dr. Guevara filed a motion for new trial, which was overruled by operation of law. C.R. 385-390. Dr. Guevara then filed an appeal before this Court. C.R. 392-393.

## SUMMARY OF THE ARGUMENT

The Court should affirm the trial court's final judgment affirming TMB's Final Order. TMB acted within its statutory authority when it disciplined Dr. Guevara by preventing him from being associated with any imaging program. Dr. Guevara's failures as an RSO were connected to his practice of medicine and were likely to deceive or defraud the public because his dual role of physician and RSO implied to his patients that their mammography results were accurate. Substantial evidence supports TMB's discipline of Dr. Guevara. He failed to ensure that MAB 1) established a quality assurance program; 2) hired qualified radiology techs; and 3) timely provided communication to mammography patients. Despite these failures, Dr. Guevara repeatedly referred his patients to MAB's mammography facility. Finally, TMB's Final Order is not

---

[2] Judge Thomas replaced Judge Connor in the 353rd Judicial District of Travis County while this case was still pending before the trial court.

arbitrary or capricious because it was tailored to address the risk that Dr. Guevara poses to patients receiving imaging. TMB considered the factors the legislature instructed it to consider, did not consider irrelevant factors, and it reached a reasonable result. TMB employed its disciplinary matrix to discipline Dr. Guevara, determining that he should not be associated with any imaging service due to the risk he posed to patients and due to aggravating factors. For all of these reasons, TMB respectfully requests the Court to affirm the judgment below.

## STANDARD OF REVIEW

The focus of the substantial evidence review is TMB's Final Order. *Scally v. Tex. State Bd. of Med. Exam'rs,* 351 S.W.3d 434, 441 (Tex. App.—Austin, 2011, pet. denied); *see* Tex. Occ. Code ch. 151. Under the substantial evidence standard of review, a court may affirm an agency decision in whole or in part. Tex. Gov't Code § 2001.174. The APA provides that an agency decision may be reversed or remanded for further proceedings:

> [I]f substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
>> (A) in violation of a constitutional or statutory provision;

(B)  in excess of the agency's statutory authority;
(C)  made through unlawful procedure;
(D)  affected by other error of law;
(E)  not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
(F)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2)(A). In reviewing TMB's Final Order, it is presumed that the order is supported by substantial evidence, and the Appellant bears the burden to prove otherwise. *Scally,* 351 S.W.3d at 441.

When applying the substantial evidence standard of review to the agency's decision, the reviewing court is prohibited from substituting its own judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion. *Bd. of Law Exam'rs v. Stevens*, 868 S.W.2d 773, 778 (Tex. 1994). The test for review of an agency action is not whether the agency reached the correct conclusion, but whether some reasonable basis for the agency's action exists in the record. *State v. Pub. Util. Comm'n*, 883 S.W.2d 190, 204 (Tex. 1994). Texas courts have stated that although substantial evidence is more than a mere scintilla, the evidence may actually preponderate against the agency decision and yet still amount to substantial evidence supporting the result reached by the agency. *Id*. at 204. If reasonable minds could have reached the

conclusion that TMB reached on the record presented, then a court undertaking review should uphold the TMB Final Order. *Stevens*, 868 S.W.2d at 778; *Tex. State. Bd. of Med. Exam'rs v. Birenbaum,* 891 S.W.2d 333, 337 (Tex. App.—Austin, 1995, writ denied).

In reviewing questions of statutory construction, the courts give "serious consideration" to an agency's interpretation of a statute that it is charged with enforcing. *R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). "In ascertaining the scope of an agency's authority, a reviewing court gives great weight to the contemporaneous construction of a statute by the administrative agency charged with its enforcement and recognizes that the legislature intends an agency created to centralize expertise in a certain regulatory area 'be given a large degree of latitude in the methods it uses to accomplish its regulatory function.'" *Sergeant Enter., Inc. v. Strayhorn*, 112 S.W.3d 241, 246 (Tex. App.—Austin 2003, no pet.). "If the agency's interpretation is consistent with the language and the purposes of the statute, the court will accept it, even if other reasonable interpretations exist." *Anderson-Clayton Bros. Funeral Home, Inc. v. Strayhorn*, 149

S.W.3d 166, 178 (Tex. App.—Austin 2004, pet. denied).[3]

The application of these standards mandates affirmance of the trial court's judgment and the TMB Final Order.

## ARGUMENT

**I. The trial court correctly affirmed TMB's Final Order, finding that TMB did not exceed its statutory authority in disciplining Dr. Guevara.**

Dr. Guevara argues that TMB exceeded its statutory authority in disciplining Dr. Guevara (Appellant's Br. at 19-26), but this argument fails. TMB acted within its statutory authority when it disciplined Dr. Guevara by preventing him from being associated with any imaging practice because he engaged in unprofessional conduct in connection to his practice of medicine that was likely to deceive and defraud the public. Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(1); A.R. at TMB1220.

---

[3] Senate Bill 14, signed into law on April 25, 2025, and codified in Title A, Subchapter G of the Government Code, amended the Administrative Procedure Act (APA) to explicitly state that Texas courts are not required to give deference to a state agency's *legal* determination regarding the construction, validity, or applicability of the law or a rule. Tex. Gov't Code § 2001.1721(a) (emphasis added). However, Courts are not prohibited from giving consideration to a state agency's legal determination that is reasonable and does not conflict with the plain language of the statute. Tex. Gov't Code § 2001.1721(b). Moreover, Senate Bill 14 does not change the well-settled standard of review of an agency's determination of the weight of the evidence, as well as other presumptions in favor of an agency's decision, in substantial evidence appeals under the APA.

Dr. Guevara engaged in such conduct by failing, as MAB's RSO, to ensure that MAB 1) instituted a quality-assurance-and-control program; 2) hired qualified techs, and 3) timely provided communication to mammography patients. *See* 25 Tex. Admin. Code § 289.230(u)-(w), (r)(2), (t)(2). Dr. Guevara also engaged in such conduct when he failed to adequately supervise the activities of his employees. Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(8); A.R. at TMB1220. Furthermore, Dr. Guevara engaged in unprofessional conduct that was likely to deceive or defraud the public when he delegated professional medical responsibility to a person he knew or had reason to know was unqualified. Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(9); A.R. at TMB1220.

The Medical Practice Act defines the practice of medicine as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who: a) publicly professes to be a physician or surgeon." Tex. Occ. Code § 151.002(13).

While Dr. Guevara argues that his conduct as an RSO was not connected to his practice of medicine (Appellant's Br. at 25), TMB

correctly determined that Dr. Guevara's failure as an RSO is connected to his practice of medicine. Dr. Guevara's responsibilities as an RSO and physician overlapped. RSOs are required to "ensure that personnel are adequately trained and complying with" the regulatory requirements in 25 Texas Administrative Code Chapter 289. 25 Tex. Admin. Code § 289.226(n)(2). Those requirements include ensuring that MAB instituted a quality-assurance-and-control program, employed qualified techs, and sent out timely communications to patients. 25 Tex. Admin. Code § 289.230(u)-(w), (r)(2), (t)(2). The Court need not defer to TMB's legal interpretation, but the Court may still give TMB's interpretation due consideration. Tex. Gov't Code § 2001.1721(b).

In *Aleman*, the court held that a "violat[ion] of state or federal law is subject to disciplinary action by the [TMB] under the Medical Practice Act *only if* the act is connected with the practice of medicine in a manner that makes it likely to deceive or defraud the public." *Aleman v. Tex. Med. Bd.,* 573 S.W.3d 796, 804 (Tex. 2019) (emphasis added). When TMB sought to discipline Dr. Aleman for manually, instead of electronically, certifying a death certificate, in violation of the law[4], the court found that

_____

[4] Texas Health and Safety Code 193.005(h) required physicians to electronically

this action, which did not involve the entry of inaccurate information, was not connected to his practice of medicine. *Id.* at 799, 805. Significantly, however, *Aleman* noted that administrative tasks that are likely to deceive or defraud the public, such as providing inaccurate information on a death certificate, do rise to the level of activity connected to the practice of medicine. *Id.* at 808

In *Lane*, an unreported Third Court of Appeals opinion, that court further elaborated upon the rule stated in *Aleman*. *Lane v. Tex. Med. Bd.*, No. 03-21-00593-CV, 2023 WL 4214954, *8 (Tex. App.—Austin June 28, 2023, pet. denied). The court held that TMB did not err in concluding that Dr. Lane's conduct was connected to the practice of medicine when he failed to timely provide requested medical records. *Lane,* 2023 WL 4214954 at *8. The court found that failing to timely provide medical records was connected to the practice of medicine because it related to the treatment of the patient. *Id.* (citing Tex. Occ Code § 151.002(9), (13)). The court also found that failing to timely provide the records may deceive or defraud the public by leading to improper treatment. *Id.*

Dr. Guevara's failure to fulfill his duties as RSO is not merely an

---

certify a death certificate.

administrative oversight as was Dr. Aleman's failure to electronically certify a death certificate. Manually signing a death certificate does not cause harm to patients. However, Dr. Guevara's failure as RSO to ensure that MAB followed the regulations for mammography providers likely harmed his patients. In *Aleman*, the court noted that providing inaccurate information on a death certificate would deceive and defraud the public. *Aleman*, 573 S.W.3d at 808. In this case, Dr. Guevara impliedly represented to his patients that MAB provided accurate mammography services by referring his own family-practice patients to MAB's mammography facility. But, without a quality-assurance-and-control program, qualified techs, or timely follow-up on results, MAB could not have provided accurate mammography services. *See* A.R. at TMB1216.

Dr. Guevara referred 90-99% of the patients who used MAB's mammography facility. A.R. Staff Ex. 42 at TMB1871 (84:04-84:06). Due to his position of authority as his patients' physician, his ownership of MAB, and his duty as RSO to ensure regulatory compliance, Dr. Guevara impliedly assured his patients of the reliability of MAB's imaging services, even though he knew or was in a position to know otherwise.

Similar to *Lane*, Dr. Guevara did not provide his patients with critical treatment information.

While Dr. Lane did not send the requested patient records, Dr. Guevara inaccurately represented the reliability of MAB's mammography facility to his patients by referring them to the facility without ensuring that the facility had a quality-assurance-and-control program, qualified techs, or timely communication. *See* Tr. 34:09-34.16; 82:12-83.01; A.R. at TMB 2031, 2034-35, 2055, Staff Ex. 44. This behavior presented a risk to patients because Dr. Guevara, or another physician, may have relied upon MAB's imaging even though it was of such poor quality that the images could not rule out breast cancer. A.R. at TMB1216. This is exactly the type of administrative action that *Lane* declared is connected to the practice of medicine—actions that threaten the misdiagnosis or mistreatment of a patient. *Lane v. Tex. Med. Bd.*, No. 03-21-00593-CV, 2023 WL 4214945, *8 (Tex. App.—Austin June 28, 2023, pet. denied). Dr. Guevara's actions were likely to deceive and defraud the public.

## II. Substantial evidence supports the findings of violation TMB found in its Final Order.

The federal law known as the Mammography Quality Standards

Act establishes national requirements for the certification of mammography providers. 42 U.S.C. § 263b. It requires facilities to meet certain quality standards, including standards requiring a facility to 1) establish and maintain a quality-assurance-and-control program; 2) to employ personnel who meet requirements to perform mammography; and 3) to provide a written report of the results of any mammography examination to each patient. 42 U.S.C. § 263b(f). The Mammography Quality Standards Act does not limit the authority of any state to enact and enforce laws related to mammography that are at least as stringent as the federal law. 42 U.S.C. § 263b(m).

In Texas, DSHS enforces the Mammography Quality Standards Act. Tex. Health & Safety Code § 401.423(b). To perform mammography in Texas, a person must apply for certification and use a certified mammography system. Tex. Health & Safety Code §§ 401.422(a), .426. The mammography system must meet certain requirements, including that it be operated by a certified medical radiologic technologist and be used at a facility that has a quality control program. Tex. Health & Safety Code § 401.424(a)(3), (4)(D). DSHS promulgated further requirements for providing mammography services in its rules. 25 Tex. Admin. Code § 289.

Though Dr. Guevara argues that an RSO is merely a technical role that concerns the use, handling, and storage of radioactive materials (Appellant's Br. at 25), as MAB's RSO, Dr. Guevara had a duty to ensure MAB's regulatory compliance. He had the duty to "ensure that personnel are *adequately trained* and *complying* with" the regulatory requirements in 25 Texas Administrative Code Chapter 289. 25 Tex. Admin. Code § 289.226(n)(2) (emphasis added). Chapter 289 delineates radiation control requirements in facilities, including the certification of mammography systems and mammography accreditation. 25 Tex. Admin. Code §§ 289.230, .234. Chapter 289 specifically requires that mammography facilities establish and maintain a quality assurance program, employ qualified personnel, and provide written communication to patients about their results. In addition to failing to ensure compliance with Chapter 289, Dr. Guevara failed to ensure that a licensed physician supervised MAB's techs, as required by statute. Tex. Occ. Code § 601.002(6)-(7). Dr. Guevara argues that substantial evidence does not support TMB's finding that he failed to practice in an acceptable manner, (Appellant's Br. at 30-33), but the record shows otherwise, as detailed in the following subsections. Staff Ex. 42 at TMB1851; Tr. 34:09-34.16;

82:12-83.01; Staff Ex. 44 at TMB2031, 2034-35, 2055.

## A. Dr. Guevara failed to ensure that MAB established and maintained a quality assurance and control program.

As MAB's RSO, Dr. Guevara should have ensured that MAB's imaging facility established and maintained a quality-assurance-and-control program. 25 Tex. Admin. Code § 289.230(u)-(w). Every mammography facility must "establish and maintain a written quality assurance program to ensure the safety, reliability, clarity, and accuracy of mammography services performed at the mammography facility, including corrective actions to be taken if images are of poor quality." 25 Tex. Admin. Code § 289.230(u). Chapter 289 provides detailed requirements for a quality-assurance-and-control program.

Responsibility for the quality assurance program must be assigned to qualified individuals, including a lead interpreting physician. 25 Tex. Admin. Code § 289.230(u)(1)(A). The lead interpreting physician must ensure that the quality-assurance-and-control program substantially complies with the manufacturer's recommendations for the image receptor.[5] 25 Tex. Admin. Code § 289.230(v)(7). A corrective action plan

---

[5] This applies as long as the system uses an image receptor modality other than screen film.

for failed quality assurance tests must also be enacted. Further, as part of the quality-assurance-and-control program, radiology facilities must undergo an annual survey by a medical physicist, evaluate new equipment, and establish protocols to keep the facility clean (in addition to other measures). 25 Tex. Admin. Code § 289.230(v)(6), (9)-(14). A quality-assurance-and-control program must also establish an annual mammography medical outcomes audit to follow-up on positive mammographic assessments. 25 Tex. Admin. Code § 289.230(w).

Substantial evidence in this case demonstrates that Dr. Guevara did not ensure that Dr. Kapilivsky, MAB's lead interpreting physician, instituted and maintained a quality-assurance-and-control program. Dr. Kapilivsky was unaware that he needed to establish and maintain a quality assurance program. Tr. 82:17-83:01. No evidence exists to demonstrate that Dr. Guevara ever informed Dr. Kapilivsky that he would need to create and maintain a quality assurance program, even after he became aware that such a program was not in place. Dr. Kapilivsky testified that Dr. Guevara never even discussed a quality assurance program with him. Tr. 34:09-34:16; 82:12-83:01. Dr. Kapilivsky believed that his duties only entailed reviewing images taken

by MAB's radiology techs and providing written reports. Tr. 32:11-32:13, 69:06-69:13, 82:17-83:01.

Due to Dr. Guevara's failure as an RSO, MAB did not maintain a written quality assurance program or perform quality control tests as recommended by the manufacturer. Staff Ex. 44 at TMB2047-48, 2055. Additionally, because no quality assurance program existed, Dr. Kapilivsky did not review and document quality control test results. Staff Ex. 44 at TMB2047-48, 2055. The failure to establish a quality assurance program means that Dr. Guevara's patients unknowingly relied on unreliable imaging.

**B. Dr. Guevara failed to ensure that MAB employed qualified personnel to perform mammography imaging.**

As MAB's RSO, Dr. Guevara had the duty to ensure that MAB employed certified medical radiologic technologists qualified to perform mammography. 25 Tex. Admin. Code § 289.230(r)(2). Substantial evidence demonstrates that Dr. Guevara did not ensure that MAB employed qualified personnel to perform mammography.

MAB hired Sergio Lugo to work as a mammogram tech from November 2018 to January 2019. A.R. at TMB1215. Sergio Lugo's

mammography license had been revoked in 2010, and that sanction remained in place until 2018. Staff Ex. 44 at TMB2031, 2054-55. The license could not be reactivated without a test, which Sergio Lugo took on December 18, 2018, but at no time during Sergio Lugo's tenure did he have a license or any other qualification to perform mammography. *Id.* As MAB's RSO and owner, Dr. Guevara could have independently verified Sergio Lugo's qualifications, but he did not. Staff. Ex. 42 at TMB1844-45, 57:20-58:06. Instead, he placed the blame on his office manager for hiring Sergio Lugo. *Id.* When the office manager discussed Sergio Lugo's lack of qualifications, Dr. Guevara ignored the information and ordered Sergio Lugo to continue to perform mammograms. Staff Ex. 44 at TMB2031.

When DSHS conducted its investigation of the mammography imaging, it found that all 27 sampled images taken by Sergio Lugo failed to meet the standards of the American College of Radiology. A.R. at TMB1216. All 30 of the images sampled by DSHS[6] were of such poor quality that the images did not reveal whether or not the patient had

---

[6] DSHS sampled a total of 30 images. Twenty-seven were taken by Sergio Lugo, and three were taken by Nancy Soto.

breast cancer. A.R. at TMB1216. Sergio Lugo's images largely fell below mammography standards because he incorrectly positioned the patient's breast, so that the machine could not capture an image of the whole breast, meaning cancer could be missed. Staff Ex. 44 at TMB2039, 2056. Even though MAB created substandard images, MAB relied on these images in many cases. A.R. at TMB 1216.

### C. Dr. Guevara failed to ensure that MAB provided the results of the mammography reports to each of his patients.

As MAB's RSO, Dr. Guevara had the duty to ensure that MAB created mammography reports and communicated results to patients and their health care providers. 25 Tex. Admin. Code § 289.230(t). A mammography facility is required to communicate the results of a mammography exam within 30 days of the exam. 25 Tex. Admin. Code § 289.230(t)(2). The written report of results must include a final assessment of findings and recommendations of further action to be taken by the referring physician. 25 Tex. Admin. Code § 289.230(t)(1).

Substantial evidence demonstrates that Dr. Guevara failed to ensure that MAB provided written communication to its patients about their mammography exams within 30 days. During the DSHS inspection,

MAB could not confirm if it had sent out letters to its patients regarding their mammography exams within the required 30 days. Staff Ex. 44 at TMB2034-35, 2055. At first, the facility could not find any letters, and then when it found some letters, it couldn't determine if the letters had ever been sent out. Staff Ex. 44 at TMB2034-35, 2055.

By failing to ensure that MAB provided written communication to mammography patients, Dr. Guevara's patients would have likely believed that their results indicated the absence of disease. But MAB likely failed to send out communications to mammography patients due to disorganization rather than to affirm that the patient did not have cancer. *See Id.* Therefore, Dr. Guevara's patients' reliance upon MAB's non-communication would be misplaced due to MAB's disorganization. Without timely discussion of mammogram results, more detailed diagnostics such as 3D ultrasounds may not be pursued, and cancers may grow unchecked, resulting in potentially catastrophic consequences for Dr. Guevara's patients.

## III. The trial court correctly affirmed TMB's Final Order because it was not arbitrary or capricious when it reached a reasonable result.

Finally, Dr. Guevara argues that TMB's Final Order imposes

unreasonable, arbitrary, and capricious disciplinary actions (Appellant's Br. at 33-35). TMB's Final Order prevents Dr. Guevara from being associated with any imaging service, including owning, operating, or acting as an RSO for any imaging service. A.R. at TMB1213-1226. TMB's disciplinary measures are not arbitrary or capricious because they are tailored to prevent a high risk to public health. Dr. Guevara's gross disregard for complying with Chapter 289 (*Supra, section II)*, in conjunction with previous discipline from TMB (A.R. at TMB1335-41, 1349-55, Staff Ex. 36) and denial of all responsibility in this case (A.R. at TMB1218) indicates that Dr. Guevara poses a risk to patient health when being associated with imaging services.

Dr. Guevara referred patients to MAB's radiology service when he knew that he had not fulfilled his duties as an RSO to ensure that the interpreting physician instituted a quality assurance program. As the owner of MAB, he should have known that he employed unqualified radiology techs. Dr. Guevara argues that his failings as an RSO are not connected to his practice of medicine. Appellant's Br. at 24-29. TMB disagrees. Dr. Guevara's failings as an RSO are directly connected to his practice of medicine because he referred patients to the MAB's imaging

facility—a facility Dr. Guevara controlled as owner and RSO. Dr. Guevara was in the best position to know that his company's radiology services provided substandard imaging to his patients. The TMB correctly determined that Dr. Guevara could not be trusted to partner with his patients to direct the scope of the patients' future health interventions in the field of imaging because he put his economic interests before the health of his patients.

Accordingly, the TMB's Final Order was reasonable in scope and was not arbitrary or capricious. An agency's decision is not arbitrary or capricious when an agency considers all factors the legislature directs it to consider; does not consider irrelevant factors; and reaches a reasonable result after weighing relevant factors. *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179 (Tex. 1994).

TMB followed the legislature's directives to discipline Dr. Guevara. The legislature has authorized TMB to regulate and discipline physicians. Tex. Occ. Code §§ 151.003, 153.001(4). The legislature has also directed TMB to take action against physicians who engage in unprofessional conduct that is likely to deceive or defraud the public when a physician "commits an act that violates any state or federal law"

in connection with his practice of medicine. Tex. Occ. Code § 164.053(a)(1). The legislature has further directed TMB to institute a disciplinary matrix to outline factors for TMB to consider during its determination of disciplinary action. Tex. Occ. Code § 164.001(f).

TMB is required to take disciplinary action against a licensed physician who violates a state or federal law, including the Medical Practice Act and DSHS radiation rules. Tex. Occ. Code § 164.001. Once TMB determines that a physician has committed an act described in Sections 164.051—164.054 of the Texas Medical Practice Act, then TMB shall "suspend, limit, or restrict the person's license or other authorization to practice medicine, including: a) limiting the practice of the person to or excluding one or more specified activities of medicine; or b) stipulating periodic board review." Tex. Occ. Code § 164.001(b)(3).

When TMB imposes a sanction as a result of a hearing before SOAH, TMB must follow its schedule of sanctions. Tex. Occ. Code § 164.001(e). The disciplinary sanction guidelines promote consistent sanctions for similar violations, but the guidelines also leave discretion for TMB to choose the appropriate sanction. 22 Tex. Admin. Code § 190.14(1); App. Tab A. The guidelines propose both low and high

sanctions from which TMB may choose. 22 Tex. Admin. Code § 190.14(1); App. Tab A. Ultimately, the choice of the sanction lies with the agency. As long as the Court finds that TMB did not act arbitrarily or capriciously, then the Court must uphold the sanction, rather than reweighing the evidence to determine if the Court would choose the same sanction. *See Stevens,* 868 S.W.2d at 777-78.

Under TMB's disciplinary matrix, when a physician falls below the standard of care, by violating a law, for more than one patient, and the physician had prior standard of care violations, then TMB may sanction the physician. 22 Tex. Admin. Code § 190.14(9); App. Tab A at 18. TMB's disciplinary matrix includes the potential low sanction of restricting the physician's practice. 22 Tex. Admin. Code § 190.14(9); App. Tab A at 20. TMB's disciplinary matrix also includes the potential high sanction of suspending or revoking the physician's license. 22 Tex. Admin. Code § 190.14(9); App. Tab A at 20.

TMB's rules also allow the board to consider aggravating factors that warrant a more severe or restrictive disciplinary action. 22 Tex. Admin. Code § 190.15. Aggravating factors may include 1) the increased potential for harm to the public; 2) previous discipline by TMB; and 3)

other relevant circumstances increasing the severity of the misconduct. 22 Tex. Admin. Code § 190.15(a). TMB found that Dr. Guevara committed three aggravating factors.

First, TMB found that Dr. Guevara's imaging practice increased the potential for harm to the public. One hundred percent of the mammography images reviewed by DSHS fell below the American College of Radiology's standard. A.R. at TMB1216. Therefore, allowing Dr. Guevara to continue to operate an imaging practice when he had notice of MAB's mammography facility's inadequacy but chose to do nothing, would put the public at risk. Secondly, the TMB noted that Dr. Guevara has previously faced two separate disciplinary actions by TMB. Dr. Guevara entered into an Agreed Order in 2010 regarding inadequate medical records. Staff Ex. 36 at TMB1335-41. TMB also adopted an Agreed Order in 2012, which disciplined Dr. Guevara after he failed to document a plan to follow up on an abnormal X-ray and that patient later received a Stage IV Cancer diagnosis. Staff Ex. 36 at TMB1349-55. Finally, TMB determined that Dr. Guevara continuously minimized his responsibility for the poor performance of MAB's radiology facility and did not accept responsibility for hiring unqualified personnel. A.R. at

TMB1218, 1220. TMB considered this to be a relevant 'other' factor that would increase the severity of Dr. Guevara's misconduct.

TMB acted reasonably instead of arbitrarily and capriciously when it limited Dr. Guevara's practice by restricting him from owning/operating or otherwise being associated with an imaging practice. Dr. Guevara engaged in unprofessional conduct in connection to his practice of medicine that was likely to deceive and defraud the public. *See Supra, section I*; Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(1), .053(a)(8), .053(a)(9); A.R. at TMB1220. Therefore, TMB determined that merely preventing Dr. Guevara from being associated with mammography, performing mammography, and supervising or delegating mammography would not be enough to protect his patients and the public. A.R. at TMB1220.

Instead, TMB issued its Final Order, which prevents Dr. Guevara from being associated with *any imaging* service, including, performing imaging services and supervising or delegating imaging services. A.R. at TMB1221. In weighing the evidence, the TMB found this broader ban was necessary to prevent risk to the public because Dr. Guevara fell below the standard of care for multiple patients by referring them to

MAB's substandard mammography facility when he had the responsibility to ensure that it had a quality assurance program in place. *See* 22 Tex. Admin. Code § 190.14(9); App. Tab A at 18-20; 25 Tex. Admin. Code § 289.226(n)(2).

The TMB had the authority to revoke Dr. Guevara's license entirely but instead chose to restrict his practice to non-imaging services. Because TMB had the discretion to choose this sanction and only considered relevant factors in the determination of its sanction, TMB's Final Order is neither arbitrary, nor capricious, nor an abuse of discretion.

## CONCLUSION

Appellee TMB respectfully requests the Court affirm the trial court's final judgment and the TMB's Final Order in all respects. TMB further requests such other and further relief as the Court may deem just.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney
General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil
Litigation

**ERNEST C. GARCIA**
Chief, Administrative Law Division

/s/ *Kathy Johnson*
**KATHY JOHNSON**
Assistant Attorney General
Texas State Bar No. 24126964
**TED A. ROSS**
Assistant Attorney General
Texas State Bar No. 24008890

Office of the Attorney General
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4164
Facsimile: (512) 320-0167
kathy.johnson@oag.texas.gov
ted.ross@oag.texas.gov

**ATTORNEYS FOR APPELLEE**
**TEXAS MEDICAL BOARD**

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i) and relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document is 5,449, excluding those portions exempted by Rule 9.4(i)(1).

*/s/Kathy Johnson*
**Kathy Johnson**
ASSISTANT ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, a true and correct copy of the above and foregoing document was sent to the following attorneys in charge via electronic service and/or electronic mail:

Hayley Ellison
Davis & Santos, PLLC
719 S. Flores St.
San Antonio, TX 78204
P: 210-853-5882
hellison@dslawpc.com

ATTORNEY FOR APPELLANT

*/s/Kathy Johnson*
**Kathy Johnson**
ASSISTANT ATTORNEY GENERAL

# APPENDICES

Tab A - TMB Disciplinary Matrix

# APPENDIX

# A

Figure: 22 TAC §190.14(9)

| Violation Description | Statutory/Rule Citation | Low Sanction | High Sanction |
|---|---|---|---|
| Abusive or Disruptive Behavior | §164.052(a)(5) (unprofessional conduct likely to injure public); Rule §190.8(2)(K), (P) | Remedial Plan: Anger management and communications CME, JP exam, medical ethics | Agreed Order with IME or Public Referral to PHP; CME in medical ethics, anger management, communications with colleagues, JP exam. For multiple orders or egregious actions--interfering with patient care: public reprimand, suspension with terms and conditions |
| Aiding in unlicensed practice | §164.052(a)(17) (directly or indirectly aids or abets unlicensed practice) | Remedial Plan: Directed CME in supervision or delegation if applicable; 8 hours CME in medical ethics, 8 hours CME in risk management; must pass JP within 1 year | Agreed Order: Public reprimand, all sanctions in low category, plus $2,000 admin penalty |
| Bad faith mediation by a licensee in relation to an out-of-network health benefit claim | §1467.101 and 1467.102 of the Texas Insurance Code (bad faith in out-of-network claim dispute resolution)--"except for good cause shown, the regulatory agency shall | Good cause shown: Remedial Plan: 8 hours of medical ethics; otherwise, admin penalty is statutorily required | Agreed Order: Public reprimand; $5,000 admin penalty, "except for good cause shown" per §1467.102; plus all |

| | impose an administrative penalty" | | sanctions in low category |
|---|---|---|---|
| Boundary Violation: Engaging in sexual contact with a patient or engaging in sexually inappropriate behavior or comments directed towards a patient | §164.052(a)(5) (unprofessional conduct likely to injure public); Rule §190.8(2)(E)-(F) | **RP is statutorily prohibited** Verbal remarks, or inappropriate behavior, but not involving touching: Agreed Order: Public reprimand; Vanderbilt or PACE boundaries course; JP exam; CME in ethics; chaperone | Cases involving physical contact: Agreed Order: Low sanctions plus IME, Replace chaperone with may not treat patient of the affected gender; or suspension or revocation |
| Boundary Violation: Becoming financially or personally involved with a patient in an inappropriate manner | §164.052(a)(5)(unprofessional conduct likely to injure public); Rule §190.8(2)(G) | **RP is statutorily prohibited** Single incident: Agreed Order: CME in ethics, JP exam; if financial involvement, restitution if appropriate; and/or admin penalty | More than one incident (more than one patient, or occasion): Agreed Order: Low Sanctions plus: Public reprimand; Vanderbilt or PACE boundaries course; JP exam; CME in ethics; administrative penalty; or suspension or revocation |
| Breach of Confidentiality | §164.052(a)(5) (unprofessional conduct likely to injure public); Rule §190.8(2)(N) | Remedial Plan: 8 hours risk management CME to include HIPAA, $500 administration fee | Agreed Order: Public reprimand, CME in risk management and in HIPAA requirements; $3,000 per occurrence; JP exam |
| Cease and desist order--issuance | §164.002 (Board's general authority to dispose of "any | | |

| | | | |
|---|---|---|---|
| of:<br>See "Unlicensed practice of medicine" | complaint or matter" unless precluded by another statute) §165.052 (power to issue cease and desist orders against unlicensed persons) | | |
| Cease and desist order (existing), violation of | §165.052(b) (violation of (c) and (d) is grounds for imposing admin penalty) | Administrative penalty $2,000 - $5,000 per offense | Referral to Attorney General for civil penalty and costs or criminal prosecution. §165.101 (civil)and §165.152 (criminal) |
| Change in practice or mailing address, failure to notify the board of | §164.051(a)(3) Rule §166.1(d) (notify Board within 30 days of change of mailing or practice address or professional name on file) | Remedial Plan: 4 hours of ethics/risk management and $500 administration fee | Agreed Order: 8 hours of ethics/risk management; $2,000 admin penalty; JP exam |
| CME - Failure to obtain or document CME | §164.051(a)(3) (forbids breaking or attempting to break a Board rule); Rule §166.2 (48 credits each 24 months + other requirements and accreditation of CME req'ts) | Remedial Plan: All missing hours of CME and 4 hours of ethics/risk management and $500 administration fee | Agreed Order: 8 hours of CME in ethics/risk management plus complete all missing hours; $1,000 admin penalty; JP exam |
| Crime: Abortion - performing a criminal abortion. Health and Safety Code §170.002 and Chapter 171 (§170.002 prohibits third-trimester abortions, with exceptions; | §164.052(a)(16) (prohibits performing, procuring, aiding, or abetting in procuring a criminal abortion); §164.055 (requires "appropriate disciplinary action" against a physician who violates Health and Safety Code §170.002 or | Agreed Order: Public Reprimand; must pass JP within 1 year; $5,000 admin penalty | Agreed Order: Suspension, probated with terms, or revocation |

| | | | |
|---|---|---|---|
| Chapter 171 requires physicians to make available certain materials to abortion patients and restricts how informed consent is obtained; the criminal offense (§171.018) is an unspecified class of misdemeanor punishable only by a $10,000 fine) | Chapter 171) | | |
| Crime: Arrest for offense under Penal Code §§21.02; 21.11; 22.011(a)(2); 22.021(a)(1)(B); (assaultive offenses against children) | §164.0595 (Temporary suspension or restriction of license for certain arrests) | Agreed Order: Restriction of license, chaperone; may not treat pediatric patients | Agreed Order: Suspension of license, no probation |
| Crime: Deferred adjudication community supervision for offense under Penal Code §§21.11; 22.011(a)(2); 22.021(a)(1)(B); (assaultive offenses against children) | §164.057(c) (mandates revocation upon proof of deferred adjudication community supervision) | | Revocation is statutorily required |
| Crime: Felony conviction | §204.303(a)(2) of the Physician Assistant Act; §205.351(a)(7) of the Acupuncture Act; §164.057(a)(1)(A) of the Medical Practice Act | Initial conviction: Statutorily required §190.8(6)(A)(iv) and §164.057(a)(1)(A); suspension to | Revocation is statutorily required on final conviction - §164.057(b) |

| | (requires suspension on initial conviction for a felony) | occur by operation of law pursuant to §187.72 | |
|---|---|---|---|
| Crime: Felony deferred adjudication; Misdemeanor involving moral turpitude deferred adjudication | §204.303(a)(2) & (3) of the Physician Assistant Act; Board Rule 185.17(7)& (11); §205.351(a)(7) of the Acupuncture Act; §164.051(a)(2)(A) of the Medical Practice Act (authorizes sanctions for initial convictions and deferred adjudications for felonies and misdemeanors involving moral turpitude) | Agreed Order: Appropriate sanction such as referral to PHP, anger management, IME, restrictions on practice, CME in appropriate area | Suspension or Revocation; §164.001(a); Revocation is statutorily required on final conviction of a felony- §164.057(b) |
| Crime: Misdemeanor conviction of crime involving moral turpitude | §204.303(a)(2) of the Physician Assistant Act; §205.351(a)(7) of the Acupuncture Act; §164.051(a)(2)(B) of the Medical Practice Act (authorizes suspension on initial conviction for misdemeanor of moral turpitude, and revocation upon final conviction) | If the offense is not related to the duties and responsibilities of the licensed occupation, the standard sanction shall require: (-a-) Suspension of license, which may be probated; (-b-) compliance with all restrictions, conditions and terms imposed by any order of probation or deferred adjudication; (-c-) public reprimand; and (-d-) administrative penalty of $2,000 | If the offense is related to the duties and responsibilities of the licensed occupation, the standard sanction shall be revocation of the license. |

| | | | |
|---|---|---|---|
| | | per violation. | |
| Crime: Misdemeanor conviction **not** involving moral turpitude that is connected with the physician's practice of medicine | Texas Occupations Code §53.021; Rule §190.8(6)(B)(iv) stating Chapter 53 of applies to misdemeanor convictions not involving moral turpitude but connected with the physicians practice of medicine and setting out factors showing connection to practice of medicine | Suspension | Revocation |
| Crime: Misdemeanor initial conviction under Penal Code Chapter 22 (assaultive offenses - **see also: arrest or deferred adjudication for assaultive offenses against children**) of crime punishable by more than a fine; **OR** Penal Code §25.07 (violation of court order re: family violence); **OR** §25.071 (violation of court order re: crime of bias or prejudice); **OR** one requiring registration as a sex offender under | §164.057(a)(1)(B), (C), (D), and (E) (when misdemeanor conviction requires suspension) | Suspension is statutorily required per §164.057(a)(1)(B) | Revocation is statutorily required on final conviction - §164.057(b) |

| Code of Criminal Procedures Chapter 62 | | | |
|---|---|---|---|
| Death certificate, failure to sign electronically | §164.053(a)(1) (authorizes sanctions via §164.052(a)(5) for breaking any law that "is connected with the physician's practice of medicine"); Health and Safety Code Chapter 193 (requires electronic filing of death certificates) | Remedial Plan: 4 hours of ethics/risk management and $500 administration fee | Agreed Order: CME – 8 hours of risk management, 4 – 8 hours medical ethics; $2,000 admin penalty; JP exam |
| Delegation of professional medical responsibility or acts to person if the physician knows or has reason to know that the person is not qualified by training, experience, or licensure to perform the responsibility or acts | §164.053(a)(9) (describes the violation as unprofessional conduct, allows sanctions) | Remedial Plan: 12 hours CME in supervision and delegation, 8 hours in risk management, 8 hours in medical ethics; JP exam | Agreed Order: Low sanctions plus no delegation or supervision authority; administrative penalty of $2,000 per violation |
| Discipline by peers, may be either an administrative violation or SOC | §164.051(a)(7) (describes offense: includes being subjected to disciplinary action taken by peers in a local, regional, state, or national professional medical ass'n or being disciplined by a licensed hospital or medical staff of a hospital, including removal, suspension, limitation of privileges, or other action IF | Agreed Order: See the applicable sanction for the violation of the Texas Medical Practice Act that most closely relates to the basis of the disciplinary action by peers. In addition, the licensee shall | Agreed Order: Public reprimand; comply with all restrictions, conditions and terms imposed by the disciplinary action by peers to the extent possible; and administrative penalty of $3,000 per |

| | | | |
|---|---|---|---|
| | the board finds the action was based on unprofessional conduct or professional incompetence that was likely to harm the public and "was appropriate and reasonably supported by evidence submitted to the board." Expert panel report provides such evidence) | comply with all restrictions, conditions and terms imposed by the disciplinary action by peers to the extent possible. | violation, plus directed CME and, if SOC case, a chart monitor. If not SOC: IME; anger management; CME in communications |
| Disciplined by another state or military may be either an administrative violation or a patient care violation | §164.051(a)(9) (describes the violation, requires that acts for which discipline imposed be the same or similar to acts in §164.052 or acts that are the same or similar to acts described in 164.051(a), for example rule violations, SOC violations, and all forms of impairment) Issue is only whether there was an order--no relitigation of prior facts, e.g., no new expert panel required | If no standard of care concerns, Remedial Plan with appropriate CME and $500 administration fee; OR reciprocal Agreed Order as appropriate. | If out-of-state order is revocation, revocation is statutorily required. |
| Drug logs - Failure to maintain (see also, violation of state or federal law connected with practice) | §164.053(a)(2) (describes offense and refers to Chapter 481 Health and Safety Code and 21 USC §801 et seq.) | Remedial Plan: 8 hours of ethics/risk management and $500 administration fee | Agreed Order: Public reprimand; 8 hours of ethics/risk management; $2,000 admin penalty; JP exam |
| Employing a revoked/cancelled / or suspended physician (see also aiding and | §164.052(a)(14) (describes offense: "directly or indirectly employs . . .); §164.052(a)(15) (forbids associating in the practice of medicine with such a person) | Agreed Order: Public reprimand; $3,000 admin penalty; take and pass JP exam | Agreed Order: Public reprimand; $5,000 admin penalty; JP exam; no delegation authority |

| | | | |
|---|---|---|---|
| abetting the unlicensed practice) | | | |
| Failing to adequately supervise subordinates and improper delegation | §164.053(a)(8); §164.053(a)(9) - These sections describe the respective violations and define them as unprofessional conduct | Remedial Plan: 12 hours CME in supervision and delegation; consider ordering Rsp to furnish ED copies of delegation orders of develop and furnish delegation orders to ED; $500 admin fee | Agreed Order: Low category sanctions plus: monitoring of practice; no delegation or supervision authority; administrative penalty of $2,000 per violation; JP exam |
| Fails to keep proper medical records | §164.051(a)(3) (authorizes sanctioning rule violations); §164.051(a)(6) (authorizes sanctioning failure to practice acceptably consistent with public welfare); Rule §165.1 describes contents of an adequate medical record | Remedial Plan: CME in appropriate area; $500 administration fee | Agreed Order: 8 or more hours of medical record-keeping, require in-person attendance if practical; chart monitor 8 – 12 cycles; $2,000 admin penalty; JP exam; PACE course in medical record-keeping if prior order for inadequate record-keeping |
| Failure to Communicate with patient or other providers | §164.052(a)(5) (prohibits conduct that is "likely to deceive or defraud the public" and unprofessional conduct as defined by §164.053) | Single incident: Remedial Plan--8 hours risk management CME to include patient communications, $500 administration | Multiple instances: Agreed Order: Public reprimand, risk management and communications CME, fine, counseling, IME |

| | | fee | |
|---|---|---|---|
| Failure to display a "Notice Concerning Complaints" sign | Rule §178.3(a)(1) (requires display of sign) | Remedial Plan: 4 hours of ethics/risk management and $500 administration fee | Agreed Order: 8 hours of ethics/risk management, $1,000 admin penalty; JP exam |
| Failure to report dangerous behavior to governmental body | §164.052(a)(5) (prohibits conduct that is "likely to deceive or defraud the public" and unprofessional conduct as defined by §164.053) | Single incident: Agreed Order: Admin penalty; CME in medical ethics; JP exam | Multiple or egregious: Agreed Order: Low category sanctions plus public reprimand and $5,000 admin penalty |
| Failure to Pay/CS | Gov't Code; Family Code Chapter 232 (authorizes suspending licenses of any kind granted by the state to persons who do not pay support payments) | Suspension until such time as the licensee is no longer in default is required – statutorily required | Suspension until such time as the licensee is no longer in default - statutorily required |
| Failure to Pay Student Loan | §56.003 of the Texas Occupations Code | Agreed Order: public reprimand; within a certain time frame, provide proof of entering into an agreement with the loan servicing agent and/or default has been cured. Auto-suspend if violate order | Suspension until such time as the licensee is no longer in default |
| Failure to report suspected abuse of a patient by a third party, when the report of that abuse | §164.052(a)(5)(prohibits conduct that is "likely to deceive or defraud the public" and unprofessional conduct as defined by §164.053); Rule §190.8(2)(O) | Remedial Plan; CME- 8 hrs risk management; JP Exam | Agreed Order: Low sanctions plus public reprimand; administrative penalty |

| | | | |
|---|---|---|---|
| is required by law | | | $3,000 per violation |
| Fees, failure to provide explanation of | §101.203 (prohibits overbilling via ref to Health and Safety Code §311.025); §101.351 (establishes requirement and excludes application of §101.351 to physicians who post a billing practice sign in their waiting room) | Remedial Plan: 8 hours of ethics/risk management/billing practices and $500 administration fee | Agreed Order: 8 - 16 hours of CME in ethics, risk management, billing practices, and CPT coding, $2,000 admin penalty |
| Fraud on a diploma/in an exam | §164.052(a)(2); §164.052(a)(3) (describes offense as presenting an illegally or fraudulently obtained credential and cheating on exams) | Misrepresentations that do not make licensee/applicant ineligible: Remedial Plan - 8 hours of ethics/risk management and $500 administration fee | If misrepresentation makes the licensee ineligible, then revocation. |
| Fraudulent, improper billing practices - requires that Respondent knows the service was not provided or knows was improper, unreasonable, or medically or clinically unnecessary. Should not sanction for an unknowing and isolated episode. | §101.203 (prohibits overbilling via ref to Health and Safety Code §311.0025); §164.053(a)(7) (prohibits violation of Health and Safety Code §311.0025) | Agreed order: Including, but not limited to: monitoring of billing practices; directed CME; restitution; and administrative penalty of $1,000, but not to exceed the amount of improper billing | Agreed Order: Public reprimand, monitoring of practice, including billing practices; directed CME; restitution; and administrative penalty of $3,000 per violation |
| Health care liability claim, failure to | §160.052(b) (requires reporting health care liability claims to Board) Rule §176.2 | Remedial Plan: 4 hours of ethics/risk management | Agreed Order: 8 hours of ethics/risk management; |

| report | and §176.9 (prescribes form for such reporting) | and $500 administration fee | $2,000 admin penalty; JP exam |
|---|---|---|---|
| Impairment (no history and no aggravating factors such as SOC, boundary violation, or felony) | §164.051(a)(4) (authorizes sanctions for practicing by those unable because of illness, drunkenness, excessive use of substances, or a mental or physical condition); §164.052(a)(4) (forbids use of alcohol or drugs in an intemperate manner that could endanger a patient's life) | Refer to PHP--Public referral via agreed order required if case involves discharge from PHP, otherwise private referral is OK if appropriate | Voluntary surrender or temporary suspension |
| Impairment (with history or SOC violation or boundary violation or felony) | §164.051(a)(4) (authorizes sanctions for practicing by those unable because of illness, drunkenness, excessive use of substances, or a mental or physical condition); §164.052(a)(4) (forbids use of alcohol or drugs in an intemperate manner that could endanger a patient's life) | Agreed Order: IME with report to ED or to panel at re-convened ISC, restrict practice or voluntary suspension pending report; if impairment is found at ISC, suspension of license until such time as the licensee can demonstrate that the licensee is safe and competent to practice medicine, with conditions to be determined by a subsequent panel | Agreed Order: Suspension of license until such time as the licensee can demonstrate that the licensee is safe and competent to practice medicine OR Suspension probated for 10 years with terms and conditions including but not necessarily limited to: drug testing; restrictions on practice; AA or NA attendance evidenced by logs; IME for psychiatric/ psychological |

|  |  |  | evaluation and treatment; proficiency testing OR revocation. |
|---|---|---|---|
| Intimidation of Complainant | §164.052(a)(5) (prohibits unprofessional conduct as defined by §164.053 or that is "likely to deceive or defraud the public") | Single Incident: Public reprimand and fine | Multiple/Egregious: Suspension and/or revocation; significant admin penalty; CME in ethics; JP exam |
| Medical Records: failure to release/ Overcharging for | §159.006 of the Act (information furnished by licensee); §164.051(a)(3) (prohibits rule violations); Rule §165.2 (requires release to proper person as described therein unless release would harm the patient and prescribes allowable charges | Remedial Plan: 4 hours of ethics/risk management and $500 administration fee | Agreed Order: 8 hours of ethics/risk management, $2,000 admin penalty; JP exam. Also, §159.006 (Board may appoint temp or permanent custodian of patient records held by a physician) |
| Misleading advertising | §164.051(a)(3); §164.052(6) (prohibits false advertising); Rule §164.3, §164. | Remedial Plan: 8 hours of ethics/risk management, correct the advertisement and $500 administration fee | Agreed Order: 16 hours of ethics/risk management in person, correct the advertisement, $5,000 admin penalty, JP exam |
| Operating an unlicensed pharmacy | §158.001(b) (requires physicians to comply with Occupations Code Chapter 558 to operate a retail pharmacy) | Agreed Order: Must pass JP within 1 year, $2,000 penalty, CME – medical ethics | Agreed Order: JP exam; cease operating pharmacy; CME – ethics and risk management |
| Overbilling: See fraudulent, improper billing |  |  |  |

| | | | |
|---|---|---|---|
| Peer review action: See Discipline by peers | | | |
| Physician-patient relationship, Improper termination of | Rule §190.8(1)(J) (requires reasonable notice to patient of termination) | Single incident: Remedial Plan: 8 hours CME - 4 risk management and 4 ethics, $500 administration fee | Multiple instances: Public reprimand, risk management, fine, CME - in physician-patient communications |
| Pill mills, unregistered pain clinics, overprescribing – See Delegation, Supervision, Prescribing | | | Revocation |
| Prescribing controlled substances to oneself, family members, or others in which there is a close personal relationship absent immediate need, without taking an adequate history, performing a proper physical examination, or creating and maintaining adequate records | §164.051(a)(6); Rule §190.8(1)(L), (M) | Agreed Order CME 8 hours medical recordkeeping, or risk management; 8 hours appropriate prescribing of controlled substances; JP Exam<br><br>If only one prescription and no evidence of pattern, the ISC Panel may consider a remedial plan. | Agreed Order Low sanctions plus public reprimand; restrictions on prescribing to self, family, and others in which there is a close personal relationship, restrictions on practice including restrictions on prescribing and administering controlled substances and dangerous drugs, administrative penalty of $3,000 per violation |
| Prescribing dangerous drugs to oneself, family members, or | §164.051(a)(6); Rule §190.8(1)(L), (M) | Remedial Plan: CME - 8 hours medical recordkeeping or | Agreed Order: Low sanctions plus restrictions on |

| | | | |
|---|---|---|---|
| others in which there is a close personal relationship without taking an adequate history, performing a proper physical examination, or creating and maintaining adequate records | | risk management; JP Exam | prescribing to self, family, and others in which there is a close personal relationship and administrative penalty of $2,000 per violation |
| Prescribing, writes false or fictitious prescriptions OR prescribes or dispenses drugs to a person who is known to be an abuser of narcotic drugs, controlled substances, or dangerous drugs OR writes prescriptions for or dispenses to a person who the physician should have known was an abuser of narcotic drugs, controlled substances, or dangerous drugs | §164.053(a)(3),(a)(4) (defines the violations under unprofessional conduct) | Agreed Order: CME - 8 hours drug-seeking behavior, 8 hours risk management; chart monitor at least 8 cycles; if Respondent does not use one, order to develop a pain management contract with specific provisions for termination of physician-patient relationship on a maximum of 3 violations by the patient including a positive test for a controlled substance not prescribed by Respondent, drug screens required by contract; JP Exam; admin penalty of $3,000 per violation | Agreed Order Low sanctions plus: restrictions on practice including restrictions on prescribing and administering controlled substances and dangerous drugs; proficiency testing; directed CME; and increase administrative penalty to $5,000 per violation.

If evidence of false or fictitious prescriptions, surrender DEA registration certificate for all controlled substance schedules. |

| | | | |
|---|---|---|---|
| Prescribing, nontherapeutic--or dispensing, or administering of drugs nontherapeutically, one patient, no prior board disciplinary history related to standard of care or care-related violations<br><br>OR<br>prescribing, administering, or dispensing in a manner inconsistent with public health and welfare, one patient, no prior board disciplinary history related to standard of care or care-related violations | §164.053(a)(5),(a)(6) (prohibits prescribing or administering any drug or treatment that is nontherapeutic per se or because of the way it is administered or prescribed) | Remedial Plan CME in appropriate area; $500 administration fee per year. | Agreed Order: Proficiency testing, CME in appropriate area; chart monitor for 8 cycles; administrative penalty of $3,000 per violation |
| Prescribing, nontherapeutic--or dispensing, or administering of drugs nontherapeutically More than one patient or prior history of | §164.053(a)(5),(a)(6) (prohibits prescribing or administering any drug or treatment that is nontherapeutic per se or because of the way it is administered or prescribed) | Agreed Order: Proficiency testing; CME in appropriate area; chart monitor 12 cycles; administrative penalty $3,000 per violation | Agreed Order: Low sanctions plus restrictions on practice, including prescribing and administering controlled substances and dangerous drugs; |

| | | | |
|---|---|---|---|
| disciplinary action for standard of care or care-related violations<br><br>OR<br><br>prescribing, administering, or dispensing in a manner inconsistent with public health and welfare, more than one patient or prior history of disciplinary action for standard of care or care-related violations | | | and administrative penalty of $5,000 per violation. If there are aggravating factors, revocation should be considered. |
| Referring a patient to a facility, laboratory, or pharmacy without disclosing the existence of the licensee's ownership interest in the entity to the patient | §164.052(a)(5) (prohibits conduct that is "likely to deceive or defraud the public" and unprofessional conduct as defined by §164.053); Rule §190.8(2)(H) | Remedial Plan: CME 8 hrs ethics, 8 hrs risk management; within 30 days of order's entry, provide proof of implement of form used to disclose ownership to interest | Agreed Order: Low sanctions plus public reprimand; JP Exam; administrative penalty $3,000 per violation |
| Refusal to respond to board subpoena or request for information or action | §160.009 of the Act and Rule §179.4 (relating to Request for Information and Records from Physicians); §164.052(a)(5), as further defined by Board Rule 190.8(2)(B) (prohibits Unprofessional conduct as defined by §164.053 or that is "likely to deceive or defraud the | If records eventually received, Remedial Plan of 8 hours of ethics/risk management and $500 administration fee | If records never received and intentionally withheld, Agreed Order: public reprimand; JP exam; admin penalty; CME in medical ethics |

| | public") | | |
|---|---|---|---|
| Reporting false or misleading information on an initial application for licensure or for licensure renewal | §164.052(a)(1) (forbids submission of false or misleading statements of documents in an application for a license) | Misrepresentations that do not make licensee/applicant ineligible: Remedial Plan - 8 hours of ethics/risk management and $500 administration fee | If misrepresentation makes the licensee ineligible, then revocation. |
| Reporting false or misleading Board (non-licensing matter) | §164.052(a)(5), as further defined by Rule §190.8(2)(C) | Remedial Plan - 8 hours of ethics/risk management and $500 administration fee | Agreed Order: 8 hours of ethics/risk management JP Exam administrative penalty of $3,000 |
| Self-Prescribing: See "Prescribing to self." | | | |
| Solicitation of patients/Drumming | §165.155 (provides a Class A misdemeanor penalty) | Agreed Order (if no conviction): 8 hours of ethics/risk management and $500 administration fee | Egregious: Agreed Order: Public reprimand, chart sign off, $5,000 fine, JP exam, CME in medical ethics OR referral to county attorney for prosecution as Class A misdemeanor under §165.155(e) |
| Standard of Care - one patient, no prior SOC or care-related violations | §164.051(a)(6) (fails to practice medicine in an acceptable, professional manner consistent with public health and welfare) | Remedial Plan*: CME in appropriate area; $500 administration fee per year. *No RP if case concerns a patient death | Agreed Order: Proficiency testing; directed CME; chart monitor for 8 cycles; administrative penalty |

| | | | of $3,000 per violation |
|---|---|---|---|
| Standard of care - one patient, one prior SOC or care-related violation | §164.051(a)(6) (fails to practice medicine in an acceptable, professional manner consistent with public health and welfare) | Agreed Order: Chart monitor for 8 cycles; directed CME, administrative penalty of $3,000 per violation | Agreed Order: Limiting the practice of the person or excluding one or more specified activities of medicine; proficiency testing; directed CME; monitoring of the practice (either chart monitor for 12 cycles or supervising physician for a number of cases or specified period of time); public reprimand; and administrative penalty of $5,000 per violation. |
| Standard of care - one patient, more than one prior SOC or care-related violation | §164.051(a)(6) (fails to practice medicine in an acceptable, professional manner consistent with public health and welfare); §164.051(a)(8) (recurring meritorious healthcare liability claims that evidence professional incompetence likely to injure the public); Rule §190.8(5) (defines | Agreed Order: Limiting the practice of the person or excluding one or more specified activities of medicine; proficiency testing; directed CME; monitoring of the practice (either chart monitor for 12 cycles or supervising | Agreed Order: K-STAR or PACE or equivalent proficiency testing; directed CME; chart monitoring (either chart monitor for 16 cycles or supervising physician for a number of cases or specified period of time), restricting |

| | | | |
|---|---|---|---|
| | "recurring" as 3 or more claims awarded or settled for $50,000 in a 5-year period) | physician for a number of cases or specified period of time); administrative penalty of $ 3,000 per violation | the practice; withdrawal of prescribing privileges or delegating privileges; public reprimand; administrative penalty of $5,000 per violation |
| Standard of care - more than one patient, no prior SOC or care-related violation | §164.051(a)(6) (fails to practice medicine in an acceptable, professional manner consistent with public health and welfare); §164.051(a)(8) (recurring meritorious healthcare liability claims that evidence professional incompetence); Rule §190.8(5) (defines "recurring" as 3 or more claims awarded or settled for $50,000 in a 5-year period) | Agreed Order: Chart Monitor for 8 cycles; CME in appropriate area; administrative penalty of $3,000 per violation | Agreed Order: Proficiency testing; directed CME; chart monitor 12 cycles; public reprimand; and administrative penalty of $5,000 per violation |
| Standard of care - more than one patient, prior SOC or care-related violations | §164.051(a)(6) (fails to practice medicine in an acceptable, professional manner consistent with public health and welfare); §164.051(a)(8) (recurring meritorious healthcare liability claims that evidence professional incompetence); Rule §190.8(5) (defines "recurring" as 3 or | Agreed Order: Proficiency testing; directed CME; monitoring for 12 cycles; requiring oversight or restricting of the practice; public reprimand; and administrative penalty of $5,000 per violation. | Suspension or revocation |

| | more claims awarded or settled for $50,000 in a 5-year period) | | |
|---|---|---|---|
| Supervision of midlevels, failure to perform: See "Failing to adequately supervise subordinates and improper delegation." | | | |
| Unlicensed practice of medicine | §165.052(a)(see definition of "practice of medicine" at §151.002(a)(13)) | Cease and Desist Order and referral of Order to District Attorney or Attorney General | Cease and Desist Order; referral to Attorney General's office for injunction or civil penalties |
| Unsound Mind - adjudicated (See also "Impairment') | §164.051(a)(5) (enables Board to take action if a licensee or applicant "is found by a court to be of unsound mind") | Suspension of license until such time as the licensee can demonstrate that the licensee is safe and competent to practice medicine; IME and return to ISC panel with results | Temporary suspension prior to seeking revocation; show cause hearing under §164.056 |
| Violation of Board Order | §164.052(a)(5) (enables sanctioning of unprofessional or dishonorable conduct as defined by §164.053 or conduct that injures the public) | Administrative in nature- Agreed Order: Administrative Penalty of $1,000; Substantive in nature-extension of order and increase the terms of the original order | Agreed Order: Low sanctions plus: public reprimand; admin penalty of $3,000 - $5,000 |
| Violation of state or federal law | §164.053(a)(1) (authorizes sanctions via §164.052(a)(5) | If criminal law, see above under | Agreed Order: public |

| connected with physician's practice | for breaking any law that "is connected with the physician's practice of medicine") | "Crime." If civil law, Agreed Order: must pass JP exam and 8 hours of risk management/ethics | reprimand; restriction of license; surrender of controlled substance privileges; plus low sanctions |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeff Lutz on behalf of Kathy Johnson
Bar No. 24126964
jeff.lutz@oag.texas.gov
Envelope ID: 106191658
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025 0929 TMB Appellee Brief
Status as of 9/29/2025 11:52 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason M.Davis | | jdavis@dslawpc.com | 9/29/2025 11:34:23 AM | SENT |
| Ted Ross | 24008890 | Ted.Ross@oag.texas.gov | 9/29/2025 11:34:23 AM | SENT |
| Jeff Lutz | | jeff.lutz@oag.texas.gov | 9/29/2025 11:34:23 AM | SENT |
| Hayley Ellison | | Hellison@dslawpc.com | 9/29/2025 11:34:23 AM | SENT |
| Katherine Johnson | 24126964 | kathy.johnson@oag.texas.gov | 9/29/2025 11:34:23 AM | SENT |